**MARYLAND NATIONAL BANK,**
Appellee,

v.

Naomi Bauer **TOWER,** Appellant.

No. 10797.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 11, 1967.

Decided Feb. 28, 1967.

Mahlon W. Hessey, Baltimore, Md. (John H. Hessey, IV, and Hessey & Hessey, Baltimore, Md., on brief), for appellant.

Walter E. Black, Jr., Baltimore, Md. (Daniel H. Honemann, Baltimore, Md., and F. DeSales Mudd, La Plata, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Circuit Judge, and RUSSELL, District Judge.

HAYNSWORTH, Chief Judge.

In imposing a constructive trust upon the proceeds of an insurance policy in the hands of the widow of the insured in favor of the pension plan trustee, we think the District Court was quite correct to the extent that the proceeds represented the cash surrender value but incorrect as to the excess which would constitute a windfall to either claimant.

The National Life Insurance Company filed an impleader action, paying into the registry of the Court $11,500, representing the proceeds of an insurance policy issued upon the life of Creston H. Bauer. The contending claimants are Bauer's widow and the trustee under a pension plan created by Bauer's employer. To the extent that the proceeds exceed the cash surrender value of certain earlier insurance policies, they will be a pure windfall to whichever claimant prevails, as will be seen from a recitation of the very novel factual background.

Parlett Gas Company, Bauer's employer, established a pension plan in 1953 for the benefit of its employees. It provided both retirement and death benefits. The death benefits were funded by insurance. Under the pension plan, Bauer was entitled to a death benefit of $11,500, and, in December 1963, the trustee held three Continental American Life Insurance Company policies, having an aggregate face value of $11,500, insuring Bauer's life. Those policies were owned and held by the trustee. Mrs. Bauer was the designated beneficiary, but the trustee had the right at any time to change the beneficiary.

In December 1963, the pension plan committee, upon the advice of its insurance consultant, decided to switch the funding insurance policies from Continental's straight life policies, with accruing cash values, to renewable term life policies issued by National. National policies were procured, including one on Bauer's life for $11,500, effective January 1, 1964. The policy year on Continental's policies ended on December 28, 1963, and in order to avoid any gap in the coverage between December 28, 1963 and January 1, 1964, the Continental policies were allowed to run into the grace period. Indeed, Continental was not advised that its policies would not be continued until January 15, 1964, when the pension committee's insurance consultant wrote to Continental, informing it that they would be surrendered and requesting an appropriate form for the surrender of the policies and the collection of their cash surrender values. An appropriate form was mailed by Continental to the consultant on January 24, 1964, but this form was not executed and completed for forwarding by the trustee to Continental until February 10, 1964.

Meanwhile, Bauer died on January 31, 1964, after the expiration of the grace period on the Continental policies, but, because of an automatic premium loan provision in the Continental policies of which everyone connected with the administration of the pension plan was either unaware or was not consciously aware, those policies had not lapsed.

Under the circumstances, Continental readily agreed to pay the face amount of its policies aggregating $11,500, oddly deducting nothing for the premium loan which had maintained those policies in effect after January 27, 1964. The entire proceeds of the Continental policies were paid to Mrs. Bauer with the consent and approval of the pension plan trustee.[1]

National's policy on Bauer's life, of course, had been effective from January 1, 1964. Under that policy, the proceeds were payable to Mrs. Bauer as beneficiary, though, again, the trustee was the owner with the right to change the beneficiary. Sometime after the proceeds of the Continental policies had been paid to Mrs. Bauer, with the approval of the trustee, the double coverage occasioned second thoughts and the trustee claimed the proceeds of the National policy.

Under the circumstances of the unintended double insurance coverage at the time of Mr. Bauer's death, if Mrs. Bauer receives the proceeds of the National policy in addition to the proceeds of the Continental policies which she has already obtained, she will receive exactly twice as much as she was entitled to under the governing pension plan. This seemed to the District Judge an unjust enrichment of her, and it assuredly would be a most unexpected windfall.

If the trustee is held entitled to the proceeds of the National policy, it, too, will receive a most unexpected windfall to the extent those proceeds exceed the cash surrender values of the Continental policies. Those amounted to $2,337.23. The trustee had informed Continental of its purpose to surrender those policies, had obtained the surrender form and expected the Continental policies to lapse on January 27, 1964, so that their only value to anyone would be the cash surrender value payable to the trustee.

If the trustee obtains the entire proceeds of the National policy, it will not inure to the benefit of the other beneficiaries of the pension plan, except to the extent that they would provide additional security for immediate retirement claims. Their presence in the hands of the trustee would enter into the computation of subsequent contributions by the employer to the trustee to maintain the funding of the entire plan on an actuarially sound basis. The ultimate effect of the trustee's obtaining the proceeds of the National policy would be to reduce subsequent employer contributions by the approximate amount of those proceeds.

We thus have an unusual situation in which the disputed fund, in major part, will be a windfall to any of the claimants. With respect to the excess proceeds over the cash surrender value of the Continental policies, neither claimant comes to the court with any substantial equity on his side. With respect to those funds, neither has suffered any deprivation which the other should restore and neither has done any wrong, neglected any duty or violated any right of the other.

Maryland's Court of Appeals has said:[2]

A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence, or mistake, or through a breach of fiduciary duty, or through wrongful disposition of another's property.

■ It seems well-settled in Maryland that a constructive trust will be imposed to avoid unjust enrichment arising out of mistake in the absense of fraud, the

---

1. References to the trustee in this opinion are loose and intended to include the pension plan committee, the insurance consultant and others participating in the management of the pension plan and its assets.

2. Carter v. Abramo, 201 Md. 339, 343, 93 A.2d 546, 548 (1953).

violation of any fiduciary duty or any other wrongdoing.[3]  Professor Scott is of the same view,[4] and this is the general approach of the American Law Institute in the Restatement of Restitution.[5]

■ In the usual case in which a constructive trust is imposed to avoid unjust enrichment resulting from mistake, the beneficiary of the legal duty of transfer has suffered a concomitant detriment.  The equitable duty to convey depends not alone upon the enrichment of the one upon whom it is imposed, but also upon the equivalent detriment which would be suffered by the claimant if, because of the mistake, he is deprived of his property.  This is not invariably true, as Professor Scott and the Restatement both recognize.[6]  Thus, if a person in a fiduciary relationship obtains a profit, fee or commission for himself in handling the property or affairs of the person to whom he owes his fidelity, a constructive trust is imposed upon him, even though the claimant has suffered no actual loss, or his loss be less than the errant fiduciary's gain.  This, however, is the necessary result of a strict enforcement of the high standard of loyalty and fidelity imposed upon fiduciaries.  A rule which would permit a fiduciary to enrich himself out of his management of his beneficiary's or principal's property or business, so long as the beneficiary or principal can show no loss of his own principal assets, would be inconsistent with judicial enforcement of the duties of the fiduciary.

Mrs. Bauer had no fiduciary relationship to the trustee of the pension plan. She owed the trustee no duty of loyalty. She had not acted adversely to its interests until she claimed the proceeds of the National policy, and the assertion of that claim was not a violation of any pre-existing obligation she owed.

Unlike the fiduciary cases, too, the trustee has no equity in its claim to any profit to which she may ultimately be held entitled.  When an agent managing a principal's real estate acquires adjoining land, which would enhance the value of the principal's land if annexed to it under the same ownership, the principal has a strong equitable claim to the advantage of the new acquisition, for the agent was under a duty to prefer his principal over himself.  The advantage the agent claimed for himself was his principal's due because of their relationship.  In contrast, Mrs. Bauer had no such obligation, and the trustee has no such equitable claim upon her.

■ To the extent that the proceeds of the National policy do not exceed the cash surrender values of the Continental policies, there is some equity in the trustee's claim.  It intended to surrender the Continental policies for their cash surrender value.  By its mistake, it did not surrender them within the grace period and before the death of Mr. Bauer.  By its mistake, it allowed the Continental policies to be extended beyond the grace period resulting in the double coverage on the date of Mr. Bauer's death.  If it had acted earlier or if it had not been mistaken in its opinion that the Continental policies would lapse, leaving no death benefit but only the cash surrender value to which it was entitled, it would in either instance have obtained the $2,337.23.  If Mrs. Bauer is allowed to obtain the entire proceeds of the National policy after her receipt of the entire proceeds of the Continental policies, the trustee can show a loss and a detriment to it to the extent of $2,337.23.  To that extent, we

3. Dove v. White, 211 Md. 228, 126 A.2d 835 (1956); Fasman v. Pottashnick, 188 Md. 105, 51 A.2d 664 (1947); O'Connor v. Estevez, 182 Md. 541, 35 A.2d 148 (1943); Hayward v. Campbell, 174 Md. 540, 199 A. 530 (1938); Springer v. Springer, 144 Md. 465, 125 A. 162 (1924).

4. 4 Scott, Trusts § 462 (2d ed.).

5. Restatement of the Law, Restitution, § 160.

6. 4 Scott, Trusts § 462.2 (2d ed.); Restatement of the Law, Restitution, §§ 197, 202.

have a case of an unjust enrichment of Mrs. Bauer, accompanied by a loss to the trustee flowing from its own mistake. To that extent, we agree that a constructive trust should have been imposed upon Mrs. Bauer, so that the trustee will suffer no loss.

As to the remainder of the fund, since it would be a windfall to either party, we think that resolution of the controversy should depend upon other principles than those of constructive trusts.

The National policy was made payable to Mrs. Bauer as beneficiary, as were the Continental policies. The trustee had the right to change the beneficiary, though any such change could not have reduced or avoided its obligation under the pension plan. After taking out the National policy, it did nothing to change the beneficiary of the Continental policies, even though it apparently intended to keep those policies in effect through the grace period ending on January 27, 1964. Since it was clearly contemplated that there would be a short period of double coverage and since the trustee took no steps to change the beneficiary, there is, at least, a strong inference that it intended to confer an additional benefit upon the employees' dependents in the event of the death of an insured employee within that twenty-seven day period. Otherwise, the retention of the Continental policies after the effective delivery of the National policies would have been a clear case of a gamble, without cost to it of course, by which it might reap a profit in the event of the death of one of the insured employees within that period.

■ Ordinarily, of course, the owner of a life insurance policy with a reserved right to change the beneficiary cannot claim the proceeds of the policy after its maturity by death of the insured against the designated beneficiary if the owner, before the death, had taken

no steps to procure a change of the designated beneficiary.[7] The trustee, with its expert insurance counselor, must have been aware of the principle, but it took no step to change the beneficiary of the Continental policies after the effective date of National's.

Even if the trustee had substituted itself as beneficiary of all the Continental policies as of January 1, 1964, when the National policy became effective, with the intention of retaining the proceeds of the excess coverage in the event of a death within the grace period under the Continental policies, a substantial question would arise whether, under the laws of Maryland, it would be allowed to retain them.

■ Article 48A § 366 of the Annotated Code of Maryland of 1957 (1964 Replacement Volume V) prohibits obtaining insurance on the life of another if the proceeds are payable to one who has no insurable interest in the insured life. If the proceeds of an insurance policy obtained in violation of that section are recovered by one who has no insurable interest in the insured life, the personal representatives of the insured may recover them of him.

■ The trustee, of course, had an insurable interest in the life of Bauer to the extent of $11,500. The Continental policies were taken out to protect that interest, and there was no violation of § 366 when they were issued. It had no insurable interest to protect with additional insurance, however, and to the extent it intended to continue the Continental policies, it had no insurable interest in Bauer's life when it took out the duplicating National policy. Neither insurance company made any point of the matter, but Maryland's policy of permitting the personal representatives of the insured to recover the proceeds of an insurance policy paid to one who had no interest in the insured life is relevant here when the trustee claims

7. Durst v. Durst, 232 Md. 311, 193 A.2d 26 (1963); Urquhart v. Alexander, 218 Md. 405, 147 A.2d 213 (1958); Ringler v. Ringler, 156 Md. 270, 144 A. 221 (1929); Daly v. Daly, 138 Md. 155, 113 A. 643 (1921).

what to it was the wholly unexpected windfall profit upon the death of Mr. Bauer. It reinforces our conclusion that when the trustee took no steps to change the beneficiaries of the Continental policies during the continuance of the thirty-day grace period, it must be held to have intended that the advantage of any double coverage which might arise out of the death during that period should go to the beneficiaries of the deceased employee.

Since we think that it was properly held that a constructive trust should be imposed upon Mrs. Bauer in favor of the trustee to the extent of the cash surrender value of the Continental policies, the judgment to that extent will be affirmed. With respect to the excess funds, we find no basis for a constructive trust and conclude that Mrs. Bauer, as the designated beneficiary, is entitled to them.

Affirmed in part, reversed in part, and remanded.