506 A.2d 268

**UNIVERSITY NURSING HOME, INC.**

v.

**R.B. BROWN & ASSOCIATES, INC., et al.**

**No. 764, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 2, 1986.

Certiorari Denied June 26, 1986.

**50**

Jeffrey M. Axelson (Bruce M. Bender and Van Grack, Axelson & Williamowsky, on brief), Rockville, for appellant.

Albert D. Brault (Janet S. Zigler and Brault, Graham, Scott & Brault, on brief), Rockville, for appellees.

Argued Before MOYLAN, BISHOP and BLOOM, JJ.

BISHOP, Judge.

Appellant, University Nursing Home (U.N.H.), brought suit in the Circuit Court for Montgomery County against appellee, R.B. Brown & Associates, Inc. (Brown), its insurance agent, to recover damages allegedly resulting from a fire loss not fully covered by a policy obtained by Brown for appellant from Hartford Fire Insurance Company (Hartford).

At the close of U.N.H.'s case, the circuit court granted Brown's Motion for Judgment and judgment was entered for Brown on all counts of the multi-count declaration.

U.N.H. raises two issues:

I.   Did the circuit court err in granting Brown's Motion for Judgment on the breach of contract, fraudulent misrepresentation, negligent misrepresentation, and negligence counts?

II.   Did the circuit court err in excluding certain evidence U.N.H. sought to introduce?

## FACTS

The fire insurance policy issued by Hartford and obtained through Brown was in effect in 1979 when a fire damaged the U.N.H. premises.  A dispute arose between U.N.H. and Hartford as to the business interruption coverage.  U.N.H. filed a declaration against both Brown and Hartford; however, prior to trial, U.N.H. settled with Hartford and then

filed an amended declaration against Brown only. This declaration contained six counts: fraudulent misrepresentation, negligent misrepresentation, negligence, two counts of breach of contract and a strict liability count based on "unfair trade practices." Brown brought Hartford back into the case as a third party defendant, claiming indemnification or contribution. While this appeal was pending, the third party action against Hartford was voluntarily dismissed by Brown.

## I.

### *Motion for Judgment*

The trial court granted Brown's Motion for Judgment on all six counts of appellant's declaration.[1] Since U.N.H. presents no argument as to the court's action with reference to the second contract claim (Count V) and the strict liability claim (Count VI), our analysis will be limited to the granting of the Motion based on the following counts: fraudulent misrepresentation (Count I), negligence (Count II), negligent misrepresentation (Count III), and contract (Count IV).

Subsection (b) of Rule 2–519, Motion for Judgment, provides:

> When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made

---

1. Upon resolution of the Motion, judgment was entered for "defendant and third party plaintiff." Technically, judgment should have been entered for defendant (U.N.H.) and third party defendant (Hartford), because Brown's success on the claims brought by U.N.H. necessarily dictated a loss in the third party action seeking indemnification from Hartford. We shall, however, view the judgment as disposing of both U.N.H's action and the third party claim. As we noted, Brown dismissed the third party action against Hartford after this appeal had been filed.

under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

Since this was a trial before a jury, the standard is if there is any evidence, however slight, legally sufficient to support the plaintiff's case, the Motion for Judgment should be denied. *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 328, 389 A.2d 887 (1978) (interpreting the prior practice of directed verdicts under former Rule 552, the predecessor to Rule 2–519); *Beahm v. Shortall,* 279 Md. 321, 341–42, 368 A.2d 1005 (1977) (same); *Townsend v. L.W.M. Management, Inc.,* 64 Md.App. 55, 63–64, 494 A.2d 239 (1985) (same); *Virgil v. "Kash N'Karry" Service Corp.,* 61 Md.App. 23, 28–29, 484 A.2d 652 (1984) (same); *Great Southwest Fire Insurance Co. v. Huss,* 49 Md.App. 447, 461–62, 433 A.2d 1169 (1981) (same). The trial court must consider the evidence and any permissible inferences in a light most favorable to the plaintiff, and if there is *any* evidence, however slight, legally sufficient to prove the charge, the weight and credibility of that evidence is for the jury. *See Great Southwest,* 49 Md.App. at 461, 433 A.2d 1169.

## A.

### Contract

On the contract count, the trial court granted the Motion for Judgment on two grounds: first, that the count was barred by the statute of limitations; and second, that the alleged contract was too indefinite to enforce.

### 1.

### Statute of Limitations

■ The statute of limitations issue involves an intriguing aspect of this case. Although essentially contractual because the tort is derived from a contractual relation, the claim against an insurance agent for failure to procure requested coverage is a hybrid of both tort and contract principles. *See Huff v. Harbaugh,* 49 Md.App. 661, 667–68,

435 A.2d 108 (1981); *Bogley v. Middleton Tavern*, 42 Md. App. 314, 324, 400 A.2d 15 (1979), *rev'd on other grounds*, 288 Md. 645, 421 A.2d 571 (1980).

To answer the limitations question, we must determine whether and, if so, at what point U.N.H. set out in its pleadings facts which would support its claim that Brown failed to procure the coverage which it allegedly contracted to obtain. Not until after the applicable limitations period, on November 30, 1983, in the third amended declaration,[2] did U.N.H. set out the expressly labeled "breach of contract" claim. U.N.H. argues that this third amended declaration relates back to the original and the first amended declaration, both filed within limitations, because those contained substantially the same facts upon which the explicit contract action was based.

■ Where the operative factual situation set out in a timely filed preceding declaration remains essentially the same after amendment, the doctrine of relation back may be applied to bring the amended declaration within the limitations period. *See Crowe v. Houseworth*, 272 Md. 481, 485, 325 A.2d 592 (1974); *Smith v. Gehring*, 64 Md.App. 359, 364, 496 A.2d 317 (1985). This is so even if a different cause of action is pled in the subsequent declaration. The Court of Appeals in *Crowe* presented the modern view: "so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed on a new theory or involving different legal principles." 272 Md. at 485–86, 325 A.2d 592. The *Crowe* Court adopted the view expressed by Justice Holmes in *New York*

---

**2.** An original declaration (now termed a complaint under the new rules) and three amended declarations were filed in this case. To avoid any confusion which may result from the nomenclature given the various pleadings below, we shall refer to the pleadings as the original declaration, the first amended declaration, the second amended declaration, and the third amended declaration. These have been variously and erroneously categorized in the briefs as the first declaration, the second amended declaration, the third amended declaration and the fourth amended declaration.

*Central & H.R.R. Co. v. Kinney,* 260 U.S. 340, 346, 43 S.Ct. 122, 123, 67 L.Ed. 294 (1922):

> '... when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied.'

272 Md. at 489, 325 A.2d 592. *See Mack Trucks v. Webber,* 29 Md.App. 256, 262, 347 A.2d 865 (1975), *cert. denied,* 276 Md. 746 (1976). This result was reached in part to liberalize pleading requirements in order to avoid the "niceties" of strict common-law pleading and serve the ends of justice. *Crowe,* 272 Md. at 485, 325 A.2d 592. *See also Staub v. Staub,* 31 Md.App. 478, 480–82, 356 A.2d 609, *cert. denied,* 278 Md. 735 (1976). The doctrine of "relating back" is especially applicable and appropriate here because the mixed tort and contract principles present in this case lend themselves, through the amendment process, to development of different theories of recovery.

■ We must determine whether the explicit contract count set out in the third amended declaration is based substantially upon the same factual predicate as that contained in the original declaration or the first amended declaration. Count II of the original declaration stated in relevant part:

> Further, Plaintiff had retained the expert services of R. BOYD BROWN & ASSOCIATES, INC. as its insurance agent prior to the obtaining of the aforedescribed insurance policy. Defendant BROWN, is, and at all times herein mentioned was, a general agent for Defendant HARTFORD in the State of Maryland and duly authorized to do business as an insurance agent in said jurisdiction. In or about May of 1978, BROWN agreed and represented to plaintiff that it would formulate an insurance program and cause the necessary policy or policies to be written and issued, sufficient to give plaintiff full protection against all risks, reasonably likely to be experienced by plaintiff including, among others, risk from the

interruption of business caused by fire at the premises of the plaintiff. Plaintiff has for several years procured insurance through defendant BROWN and said agent was thoroughly familiar with plaintiff's business operations and knew or should have known the types of risks against which plaintiff needed insurance and the type of losses it might suffer in the event of the occurrence of a peril insured against, such as fire. Defendant BROWN held itself out to the public as an expert in insurance matters. Therefore, plaintiff placed complete confidence in said agent and relied upon it exclusively to formulate an insurance program sufficient to protect it against loss of earnings due to the interruption of business caused by fire.... On June 3, 1978, Defendant BROWN, for due payment of the premiums, issued to plaintiff HARTFORD policy No. 30 SMP 105934 effective from June 3, 1978 through June 3, 1981 which, it represented to plaintiff would provide sufficient coverage for all losses which might be experienced by plaintiff in the event it was subjected to a peril insured against, such as fire.... Plaintiff believing in the skill, experience, and honesty of defendant BROWN, relied on said representations and was thereby induced to purchase and did purchase said insurance policy on June 3, 1978 and paid defendant BROWN the sum of SIX THOUSAND SIX HUNDRED AND FIVE DOLLARS ($6,605.00) as the first year's premium and the defendant BROWN made said representations with knowledge of their falsity and with intent to induce plaintiff to rely thereon.... By a reason of defendant BROWNS misrepresentations as herein alleged, plaintiff has been damaged in its total sum of ONE HUNDRED SEVENTY–SIX THOUSAND FOUR HUNDRED SIXTY DOLLARS ($176,460.00) which is the gross earnings loss by plaintiff as a result of the fire damage sustained on its premises, FORTY THOUSAND ($40,-000.00) DOLLARS of which has been paid by HARTFORD.

The first amended declaration, in relevant part, provided in Count II:

In or about May of 1978 BROWN agreed and represented to plaintiff that it would formulate an insurance program and cause the necessary policy or policies to be written and issued, sufficient to give plaintiff full protection against all risks, reasonably likely to be experienced by plaintiff including, among others, risk from the interruption of business caused by fire at the premises of the plaintiff. Plaintiff has for several years procured insurance through defendant BROWN and said agent was thoroughly familiar with plaintiff's business operations and knew or should have known the types of risks against which plaintiff needed insurance and the types of losses it might suffer in the event of the occurrence of a peril insured against, such as fire. Defendant BROWN held itself out to the public as an expert in insurance matters. Therefore, plaintiff placed complete confidence in said agent and relied upon it exclusively to formulate an insurance program sufficient to protect it against loss of earnings due to the interruption of business caused by fire. Defendant BROWN was fully aware that plaintiff was relying on it to provide complete insurance coverage and that plaintiff's officers and agents were inexpert in insurance matters. On June 3, 1978, Defendant BROWN, for due payment of the premiums, issued to plaintiff HARTFORD policy No. 30 SMP 105934 effective from June 3, 1978 through June 3, 1981 which, it represented to plaintiff would provide sufficient coverage for *all* losses which might be experienced by plaintiff in the event it was subjected to a peril insured against, such as fire.... Plaintiff believing in the skill, experience, and honesty of defendant BROWN, relied on said representations and was thereby induced to purchase and did purchase said insurance policy on June 3, 1978 and paid defendant BROWN the sum of SIX THOUSAND SIX HUNDRED AND FIVE DOLLARS ($6,605.00) as the first year's premium.... By reason of defendant

Brown's misrepresentations as herein alleged, plaintiff has been damaged in its total sum of ONE HUNDRED SEVENTY-SIX THOUSAND FOUR HUNDRED SIXTY DOLLARS ($176,460.00) which is the gross earnings lost by plaintiff as a result of the fire damage sustained on its premises, FORTY THOUSAND ($40,000.00) DOLLARS of which has been paid by HARTFORD.

Count IV of the third amended declaration, expressly labeled "breach of contract" provided, in relevant part:

In or about May, 1979, in response to the plaintiff's request for appropriate and adequate business interruption insurance coverage necessary to cover all losses experienced by the Plaintiff, the Defendant agreed to undertake to obtain such coverage, apparently did obtain such coverage, and issued a written statement to the Plaintiff showing the coverage obtained by Defendant on Plaintiff's business, and the premiums to be paid therefore, as more fully set forth in the statement, a copy of which is attached hereto and marked Exhibit "B" and incorporated herein by reference. Exhibit "B" constituted a contract of insurance by the Defendant that the Plaintiff had adequate business interruption insurance coverage in the amount and type set forth therein. In consideration of the statement as aforesaid, the Plaintiff agreed to pay premiums to the Defendant, and did in fact pay said premiums.

Defendant breached the contract of insurance by not having at the time and failing to obtain prior to June 3, 1978, the insurance set forth in Exhibit "B" as described in Exhibit "B." ... Plaintiff subsequently made claim for such business interruption coverage through the Hartford, and discovered that the Defendant, R.B. BROWN, had not obtained the business interruption insurance coverage as set forth in Exhibit "B," but instead had obtained different coverage with an endorsement which materially altered the coverage which Defendant had represented was in effect and which materially impaired the value of the policy to the Plaintiff.... As a

direct result and proximate result of the Defendant's breach of contract, Plaintiff has sustained damages in the sum of Ninety-one Thousand Four Hundred Sixty and No/100 ($91,460.00) Dollars.

The contract count of the third amended declaration is based substantially upon the same factual predicate as that in Count II of the original declaration and the first amended declaration. Each is based upon the relationship U.N.H. entered into with Brown in which the latter undertook, in exchange for a fee, to procure adequate insurance coverage for U.N.H. The only factual matter added in the third amended declaration was the reference to the June 2, 1978 letter, which merely supports the allegation but does not amount to a newly pleaded fact. While the "Breach of Contract" action is explicitly added to the third amended declaration, the facts upon which it is based are essentially contained in the "misrepresentation" counts in the earlier declarations. Before the limitations period ran, Brown had notice of the specific conduct upon which the contract claim was based. The trial court erred in granting the Motion for Judgment on the contract count based on limitations.

## 2.

### *Indefiniteness*

■ The trial court ruled that the alleged contract was "totally too indefinite to enforce." We disagree.

We will review the evidence produced by U.N.H. on this issue. In 1975 appellant obtained a three year policy from appellee. When the policy came up for renewal, Richard Hamlin, an agent of Brown, contacted Robert Hagerman, the Chief Administrator of U.N.H., who was responsible for procuring insurance. Hagerman testified that, in response to his request that Hamlin present a policy which would provide adequate coverage for U.N.H., Hamlin sent a letter outlining a suggested policy. Hagerman also testified that Hamlin represented that the business interruption coverage to be provided by the proposed policy would fully cover all income which U.N.H. could potentially lose as a result of a

fire or other disaster causing U.N.H. to be either partially or totally out of operation. Based upon these representations and in reliance on Brown's expertise, U.N.H., through Hagerman, purchased from Brown the policy which Hamlin had recommended.

Considering this evidence, as we must, in the light most favorable to U.N.H., Brown undertook to provide for U.N.H. adequate insurance which was to include, specifically, complete business interruption coverage, in exchange for a monetary consideration to be paid to Brown by U.N.H. This evidence is definite enough to support the existence of a contract. *See Geo. Bert. Cropper, Inc. v. Wisterco Investments, Inc.*, 284 Md. 601, 619, 399 A.2d 585 (1979) (to be enforceable, obligations must be sufficiently specific to determine intent of the parties); *Maryland Supreme Corp. v. Blake Co.*, 279 Md. 531, 538–41, 369 A.2d 1017 (1977) (same). The trial court erred in granting Brown's Motion for Judgment based on the ground that the contract was too indefinite to enforce.

## B.

### Fraudulent Misrepresentation

On the fraudulent misrepresentation count, the trial court granted Brown's Motion for Judgment because it found inadequate proof of "deceit." The elements of a fraudulent misrepresentation claim are:

(1) that a representation made by the defendant was false; (2) that either its falsity was known to the defendant or the misrepresentation was made with such reckless indifference to truth as to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon the misrepresentation but had the right to rely upon it with full belief in its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation.

*Appel v. Hupfield,* 198 Md. 374, 378, 84 A.2d 94 (1951). *See also Juliano v. Lion's Manor Nursing Home,* 62 Md.App. 145, 153, 488 A.2d 538 (1985); Gilbert, *et al. Maryland Tort Law Handbook,* § 17.1 at 172–73. We interpret the trial court's ruling to mean that appellant failed to prove the first three required elements.

We hold that the trial court was correct. The evidence does not support the existence of the required level of scienter. In fact Hagerman, the Chief Administrator of U.N.H., who was responsible for dealing with Brown testified that there was no intentional fraud on the part of Brown and that the latter's agent simply misinterpreted the coverage.

## C.

### Negligence and Negligent Misrepresentation

On the negligence and negligent misrepresentation counts, the trial court found that the release agreement executed between Hartford and U.N.H. barred the latter from recovering from Brown and that there was no proof that the alleged negligence of Brown proximately caused the damages that U.N.H. claimed.

### 1.

### The Release

■ Prior to trial, U.N.H. settled with Hartford and a document entitled "General Release of All Claims" was executed. This document specifically provided for a reservation of U.N.H.'s claims against Brown. The release, in relevant part, provides:

[I]n consideration of ... $85,000.00 ... University Nursing Home [appellant] ... does hereby release, acquit and forever discharge The Hartford Fire Insurance Company, The Hartford Insurance Group, their predeceasors, employees, officers, insurers, successors and assigns, and all other persons, firms and corporations (all of whom will

hereafter collectively be referred to as the "Hartford"), except R.B. Brown & Associates, Inc. [appellee] and the Estate of Richard Hamlin, of and from any and all claims, actions, causes of action, demands for money, claims for costs, breach of contract, expenses, compensation, consequential damages or any other thing whatsoever, and of and from any and all claims and demands now existing, known or unknown, suspected or unsuspected, and all claims for consequential, punitive and/or exemplary damages arising out of or in any way connected with all known and unknown damages and/or injury allegedly resulting from a fire that occurred at the University Nursing Home on or about April 13, 1979, and the allegedly resulting interruption to the business of the University Nursing Home, for which University Nursing Home has alleged or might allege the Hartford has responsibility arising from a policy of insurance identified as 30SMP1055934 between the University Nursing Home and the Hartford including but not necessarily limited to those matters raised in Law Action No. 56036 filed in the Circuit Court for Montgomery County, Maryland.

Brown was not a party to the release.

Prior to trial and at trial, Brown asserted that, despite the specific reservation of rights, the release of Hartford also released it. Each of the four judges who participated at some point in the case, including the judge presiding at trial, rejected this argument; [3] however, after hearing U.N. H.'s case, and extensive argument from counsel, the trial judge reversed his decision and granted Brown's Motion for Judgment on the negligent misrepresentation and the negligence counts based in part on the release.

---

3. Appellant's argument that prior denials of the appellee's Motion for Summary Judgment barred the trial court from granting the Motion for Judgment based on the "law of the case" is without merit. *See Ralkey v. Minnesota Mining & Mfg. Co.,* 63 Md.App. 515, 522, 492 A.2d 1358 (1985) (law of the case doctrine does not apply unless a statute or rule renders decision binding, denial of Motion for Summary Judgment does not fall within this category).

a.

### The Law of Release

In *Huff v. Harbaugh,* 49 Md.App. 661, 435 A.2d 108 (1981) this Court stated:

> [W]e hold that where a wrong consists of separate and distinct, although closely related, injuries for which the parties are respectively liable, then the release of one with respect to his wrongdoing will not discharge the other from liability for his share in the transaction.

49 Md.App. at 671, 435 A.2d 108. *See also Kramer v. Emche,* 64 Md.App. 27, 38–39, 494 A.2d 225 (1985). The trial court concluded that this case involved only one indivisible injury and that therefore U.N.H.'s settlement with Hartford released Brown. U.N.H. asserts that there are two related and distinct wrongs, each of which contributed respectively to its damages, and therefore the release of Hartford from its wrong does not release Brown from its independent wrongdoing. We agree that two related but separately alleged wrongs existed, each of which could give rise to damages.[4] *See Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co.,* 105 Ill.App.3d 671, 61 Ill.Dec. 212, 215, 434 N.E.2d 365, 368 (1982) (two distinct injuries where suit against insurer under contract as written and against agent for failure to procure policy in conformance with requests).

Appellant's pleading and proof supports this conclusion. At the time of the October 28, 1983 release of Hartford, the declaration in effect was the second amended declaration, filed on October 26, 1983. *See Mark Downs, Inc. v. McCormick Prop.,* 51 Md.App. 171, 181 n. 3, 441 A.2d 1119 (1982) (amended declaration replaces earlier declaration in its entirety). This version of the declaration was simply the first amended declaration amended by interlineation to delete all

---

**4.** Since we conclude that two separate injuries are involved, the Uniform Contribution Among Joint Tortfeasors Acts, Maryland Ann. Code, art. 50, § 16 *et. seq.* and cases construing it are not applicable.

claims against Hartford based on vicarious liability through appellee. The only remaining claim against Hartford was for breach of the contract represented by the policy as it was written. The remaining counts in that declaration were against appellee only and were based upon appellee's relationship with appellant and not on appellee's capacity as Hartford's agent. Two separate wrongs were alleged in the second amended declaration: Hartford's failure to pay the damages claimed under the inadequate insurance contract as written and appellee's failure to procure insurance adequate to cover the entire loss.

Further, U.N.H. presented evidence at trial of two separate causes of action giving rise to two separate injuries. There was testimony that the amount recoverable under the policy as written was between $78,000.00 and $87,000.00. The claim under the policy as written was settled for $85,000.00. Under the terms of the release this amount was explicitly specified as being paid to release Hartford's obligation under the policy. U.N.H. also presented testimony that the total loss incurred was between $172,000.00 to $177,000.00 and that if the policy had been written in accordance with its alleged contract with Brown it would have recovered the difference between the $85,000.00 paid by the insurance company under the terms of the policy and the amount that should have been paid had the policy been written to provide the coverage required under the contract. This evidence supported the allegations contained in the declaration that there were two separate claims, one under the policy as written and one under the coverage that should have been provided. Clearly these would give rise to two separate damage claims. U.N.H., therefore, may maintain an action against Brown for the separate injury caused by Brown's alleged failure to procure the coverage required under the alleged contract. This result is consistent with *Clear-Vu Packaging*, 61 Ill.Dec. at 215–16, 439 N.E.2d at 368–69.

b.

## The Effect of Bogley

Appellee asserts, however, that an opposite conclusion must be reached in this case because of *Bogley v. Middleton Tavern*, 288 Md. 645, 421 A.2d 571 (1980). *Bogley* involved an action by an insured (Middleton) against its insurance agent (Bogley) and the insurer (Aetna) seeking recovery under an insurance policy for damages caused by fire. The original opinion in *Bogley* and the subsequently filed clarification resulting from the Motion for Reconsideration hold that the insurer is ultimately liable for the negligence of an agent who fails to include in the policy ordered the full coverage for which the insured bargained. 288 Md. at 653, 421 A.2d 571. The agent is liable to the insurer only for the additional premium the company would have collected had the insurance contract been properly written by the agent. 288 Md. at 651, 421 A.2d 571. The trial court in the case *sub judice* reasoned that since, under *Bogley*, Hartford is ultimately liable for Brown's negligence, the release of Hartford also released Brown, the party secondarily liable.

The trial judge reasoned that since he found as a matter of law that only one injury was involved, and that under *Bogley* Hartford was ultimately responsible for Brown's liability, the legal effect of the release was to release Brown, Hartford's agent, the party secondarily liable, despite the attempted reservation of rights in the release. Since we have concluded that two distinct injuries are involved giving rise to two distinct measures of damages, we hold that the trial court erred. Although *Bogley* may be the basis for Hartford's being ultimately liable for any judgment against Brown, that case did not support the conclusion that where there are two wrongs giving rise to two separate damages, a release of the insurance company releases the agent. We are not deciding whether *Bogley* requires Hartford to pay such a judgment. That issue is not before us.

c.

*Plain Language of the Release*

The document releases Hartford "and all other persons, firms, corporations (. . . collectively referred to as the 'Hartford'), *except* R.B. Brown & Associates, Inc., . . . from any and all claims, . . . arising out of or in any way connected with . . . a fire that occurred at the University Nursing Home . . . for which University Nursing Home has alleged or might allege the Hartford has responsibility *arising from a policy of insurance identified as 30SMP1055934.*" (emphasis added). Hartford therefore is fully released of any liability under its policy. To the extent Brown may be found to be liable to U.N.H., Hartford may be exposed to additional liability as the party primarily responsible; however, as we have stated, this specific issue is not before us.

d.

*Summary*

We hold that the release of Hartford, which specifically reserved rights against Brown, did not bar an action against the latter, and the trial court erred in granting appellee's Motion for Judgment on this ground. This result follows the policy of court decisions holding that while an individual should not be permitted to recover more than the actual damages, an injured individual should be able to collect one full satisfaction. *See, e.g., Huff,* 49 Md.App. at 670, 435 A.2d 108. This result also gives both parties to the release what they bargained for, Hartford is released by U.N.H. to the extent of its own liability under the policy, and U.N.H. retains its right to pursue Brown in an attempt to collect the difference between the amount paid by Hartford and the amount U.N.H. would have collected had the policy been written in accordance with its contract with Brown. Brown was not a party to the release which leaves its right of action against Hartford an open and unresolved question as far as this opinion is concerned. U.N.H.'s action against Brown is not an action against Hartford, but an independent action against Brown. When Hartford en-

tered into the release, it was or should have been aware that it could be exposed to an indemnification action by Brown, who was not a party to the release. Further, there is no chance of double recovery because U.N.H. amended its complaint to seek only damages from Brown based solely on Brown's failure to provide the insurance coverage required under the contract between U.N.H. and Brown. These damages, if any, would of necessity be in excess of the settlement with Hartford which was based on the policy as it was ordered by Brown and as it was written by Hartford.

## 2.

### *Proximate Cause*

The trial court's second ground for granting Brown's Motion for Judgment on the negligence and negligent misrepresentation counts was that there was insufficient proof that the alleged negligence of Brown proximately caused the damages appellant claimed. We interpret this ruling to mean that, assuming U.N.H. presented sufficient proof of damages, there was insufficient evidence to link these damages to any negligence of Brown.

U.N.H. presented evidence that the total loss caused by the fire was between $172,000.00 to $177,000.00 and that the appropriate recovery under the policy as written was between $78,000.00 to $87,000.00. The parties stipulated that Hartford had paid $85,000.00 under the policy. U.N.H. also presented expert testimony that if certain provisions had been included in the policy, specifically a different co-insurance clause, an agreed amount endorsement, and an extended period of time endorsement, the policy would have provided the adequate coverage required by the contract. Brown correctly points out, however, that there was no testimony on direct examination that, as an insurance agent, it had such provisions available to include through Hartford or through any other insurance carrier and, that, on cross-examination, the expert admitted that he did not know if Brown had such coverage available. On direct

examination, however, the expert testified that a carrier covering the types of risks involved in this case generally has coverages available for all variables of those types of risks. U.N.H. also presented expert testimony that in light of the policy limits two provisions should not have been included in the policy, namely the fifty percent co-insurance clause and the ordinary payroll exclusion. The expert also testified that since these provisions were included, the policy limits should have been greater.

Analyzed in the light most favorable to U.N.H., we conclude that the evidence presented was sufficient to prove that Brown's negligence could have resulted in damages to U.N.H. The jury could have inferred that provisions generally available to agents writing business interruption coverage were available to Brown and that the inclusion of the provisions would have resulted in a greater recovery under the policy. The jury could also have come to this conclusion by inferring either that the deletion of the fifty percent co-insurance clause and the ordinary payroll exclusion or the increasing of the policy limits would have resulted in a greater recovery under the policy. While perhaps not overwhelming, the evidence presented was sufficient to overcome Brown's Motion for Judgment. We hold that the trial court erred when it granted Brown's Motion for Judgment on the negligence and negligent misrepresentation counts based on the failure of U.N.H. to establish damages proximately caused by Brown's actions.

## II.

### *Evidentiary Rulings*

### A.

### *Subsequent Increase in Coverage*

■ At trial, U.N.H. attempted to introduce a memorandum from Brown to Hartford seeking a quotation for increasing the coverage provided to U.N.H. After U.N.H. proffered the substance of the memorandum, the following exchange occurred:

■

THE COURT: Why do you want this in?

MR. AXELSON [U.N.H.'s counsel]: Because it has been made part of the record that he made a change during that time—

THE COURT: It is afterwards.

MR. AXELSON: Yes, Your Honor, but it is not totally an admission of liability, only that he had a duty to properly insure us and was recommending additional coverage.

The court then denied admission and offered the following explanation for its ruling:

I declined to admit it because it is after the fire, number one. The fact that it shows an increase in insurance, but it comes after the fire, is no proof that that should have been the insurance before the fire. So those are the reasons I am denying admission.

It appears that the trial court's ruling is that the proffered evidence is not relevant to prove what adequate coverage would have been at the time of the fire. In this regard, we agree with the ruling. The court, however, neglected to address another aspect of U.N.H.'s proffer, that the evidence would help prove Brown's duty to provide adequate insurance required under its contract with U.N.H. *See, e.g., Hagan v. Wash. Sub. San. Comm'n,* 20 Md.App. 192, 198–99, 314 A.2d 699 (1974). On remand should this evidence be offered again, the court should consider the probative value of the evidence for the purpose of proving Brown's duty to provide the required coverage and weigh its admission against any possibility of prejudice to Brown. *See generally* E.W. Cleary, *McCormick on Evidence 3d,* § 275 at 815–17 (1984).

## B.

### *Expert Testimony*

U.N.H. proffered Ronald Summerville to testify as an expert on the adequacy of the insurance procured by Brown. Summerville testified in *voir dire* that he had

fourteen years experience in the insurance field, including five years as a "risk management consultant" which included experience in evaluating business interruption coverage for health care institutions. *Voir dire* also revealed that Summerville had never sold insurance, had never testified as an expert in evaluating business interruption insurance, and had "very little" experience evaluating coverage in Montgomery County in 1978.

Appellant proffered that Summerville would give an opinion on the adequacy of the insurance coverage provided by appellee to appellant in 1978. After extended argument the court commented:

> Well, I am concerned about your attempt to get this witness to testify as to the standard of care of an insurance agent in 1978, writing business interruption insurance in this County. I just don't think he is qualified.

After further argument the court ruled that the witness would not be permitted to testify because he was not "sufficiently qualified as an expert to testify on the issues that are in this case."

The trial court is provided broad discretion in allowing expert testimony. In *Stebbing v. State*, 299 Md. 331, 473 A.2d 903, *cert. denied,* —— U.S. ——, 105 S.Ct. 276, 83 L Ed.2d 212 (1984) the Court of Appeals set forth the test for appellate review of exclusion of expert testimony:

> '[T]he admissibility of expert testimony is a matter largely within the discretion of the trial court, and its action in admitting or excluding such testimony will seldom constitute a ground for reversal. It is well settled, however, that the trial court's determination is reviewable on appeal, and may be reversed if founded on an error of law or some serious mistake, or if the trial court has clearly abused its discretion.' . . . A trial judge has discretion to determine whether proffered opinion evidence of questionable relevance will be sufficiently helpful to the

jury to justify an excursion into the subject through direct, cross and redirect.

299 Md. at 350, 473 A.2d 903 (*quoting Raithel v. State*, 280 Md. 291, 301, 372 A.2d 1069 (1977)) (other citations omitted).

We hold that the trial court did not abuse its discretion in excluding Summerville's testimony. U.N.H. failed to establish that Summerville's expertise provided sufficient basis for him to evaluate the availability of business interruption coverage to insurance agents in 1978. U.N.H., of course, may supplement Summerville's qualifications on remand. As we pointed out in our discussion of the proximate cause issue, there was testimony that an insurance carrier writing fire insurance would have available to it all of the variables necessary in writing fire risks.

## C.

### *U.N.H. Earnings Summaries*

■ Through Certified Public Accountant Leonard Feldman, U.N.H. attempted to introduce income summary sheets for 1977 through 1984 to show the reasonableness of the damages claimed. The trial court allowed the income figures to be admitted through the fiscal year 1980, but excluded the income figures for years thereafter.

Appellant's counsel proffered:

Let me explain the relevancy—that by adding $177,000 within that two year period, opposed to when you are only making $18,000—it is just out of proportion.

And the witness stated:

I was attempting to show that those figures for '79 and '80 were consistent with the kinds of income they earned immediately after the home was restored.

In other words, the earnings summaries for 1980–84 would help establish the reasonableness of the damages claimed.

In *Paige v. Manuzak*, 57 Md.App. 621, 471 A.2d 758 *cert. denied*, 300 Md. 154, 476 A.2d 722 (1980) this Court stated:

For an item of evidence to be admissible, it must be both relevant and material. Evidence is material if it tends to establish a proposition that has legal significance to the litigation. Evidence is relevant if it is sufficiently probative of a proposition that, if established, would have legal significance to the litigation.

57 Md.App. at 632, 471 A.2d 758 (citation omitted).

In light of the above standard, the trial court erred in excluding the earnings summaries for 1980–84. U.N.H. was attempting to show that the sudden increase in income in a one year period was not a fluke but was, in effect, normal income when considered within the context of subsequent years. The evidence would have helped support the reasonableness of the damages claimed and corroborate other testimony as to the damages. The expert presenting the summaries, of course, is subject to cross-examination as to the summaries. On remand, the earnings summaries should be admitted if offered to prove the reasonableness of the damages claimed.

### D.

### *Fire Casualty and Surety Company Bulletins*

U.N.H. also asserts that the trial court erred in not allowing bulletins published by the Fire and Casualty Surety Company to be admitted as learned treatises. We find no proffer of the content of relevancy of these documents in the three pages of the extract to which appellant refers and therefore this issue has not been preserved for appeal.

### E.

### *Hartford Memoranda*

U.N.H.'s final evidentiary argument concerns various internal memoranda of the Hartford Insurance Company which the trial court excluded. U.N.H. proffered that the documents would corroborate its expert's analysis of both damages caused by the fire and U.N.H.'s interpreta-

tion of the fire insurance policy. At trial Brown argued four grounds in support of excluding the memoranda: first, relevance; second, hearsay; third, the documents contained expert opinions of individuals who had not been qualified as experts; and fourth, the documents contained testimony of experts not identified by U.N.H. in discovery.

The trial court did not specify its grounds in excluding the memoranda, and a statement of the specific grounds of the rulings was not requested by U.N.H. We shall assume that the court based its ruling on the four grounds stated above. U.N.H., however, addresses only the relevancy and hearsay points and does not attempt to present argument why the trial court erred in following the alternative grounds. Since this amounts to a waiver of those two grounds, we must affirm the ruling.

## CONCLUSION

In summary, we affirm the trial court's granting of the Motion for Judgment on the fraudulent misrepresentation count (Count I) and reverse as to the granting of the Motion on the negligence count (Count II), the negligent misrepresentation count (Count III), and the first contract count (Count IV).

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION;

COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEES.