906 A.2d 409

John M. BAILIFF, et al.

v.

Jane WOOLMAN, Personal Representative of
the Estate of Emma J. Gordy, et al.

No. 289, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Sept. 1, 2006.

Wayne S. Goddard, Towson, for appellant.

Jay C. Emery, III, Elkton, for appellee.

Panel ADKINS, KRAUSER, LAWRENCE F. RODOWSKY, (Retired, specially assigned) JJ.

KRAUSER, J.

At the center of this property dispute are two adjacent parcels of land, which were owned by different members of the same family, who treated the two parcels, for decades, as if they were one property. One parcel ("Lot 3") has a house on it; the other ("Lot 1") does not. Appellee Krauss & Weaver, LLC ("K & W") purchased one of the two parcels believing it was buying the improved Lot 3, a belief shared by the seller, the Estate of Emma J. Gordy ("Estate").[1] But, what K & W had, in fact, purchased was the unimproved Lot 1.

Had this been the only error, the matter could have been swiftly resolved by a modification of the deed. But it was not. Although the Estate did have title to unimproved Lot 1, which K & W actually purchased, it did not have title to the improved Lot 3, which K & W thought it was buying. That lot was purportedly owned by another member of Emma Gordy's family, appellant John M. Bailiff.[2]

1. Although it is named as an "appellee" in this matter, the Estate did not submit a brief.

2. Appellees' cause of action named as defendants both John Bailiff and his mother, Bessie Bailiff, even though she had died years earlier.

The seeds of this mix-up were sowed many years earlier. Both lots were originally owned by Olive R. Lowe, the mother of Emma Gordy and the grandmother of John Bailiff. Besides Emma Gordy, Olive Lowe had two other daughters: Bessie Bailiff and Florence Wysong. In what appears in hindsight to have been a two-step process, she divided her property among her three daughters by first creating a joint tenancy as to Lot 1 between herself and her daughter Emma Gordy and then later leaving, in her will, the rest of her property, including Lot 3, to her two other daughters, Bessie Bailiff and Florence Wysong, in the form of a life estate. Bessie Bailiff's son, John Bailiff, was to receive the property left to Bessie and Florence when they died. Thus, upon Olive Lowe's death, Lot 3, the improved lot, passed, under her will, to Bessie Bailiff and Florence Wysong as a life estate, while Lot 1, the unimproved lot, passed by right of survivorship to Emma Gordy.

But this difference in ownership was all but ignored by members of the Lowe–Gordy–Bailiff family, both before and after Olive Lowe's death. Although Olive Lowe and her daughter, Emma Gordy, jointly owned Lot 1, Emma Gordy moved into the house on Lot 3, at Olive Lowe's invitation. After Olive Lowe died in 1958, Emma Gordy continued to live there with her daughter Joan Woolman, and Woolman's children. In fact, except for a period of several years after she married, Emma lived in the "Lot 3" house until her death in 1999. And, even when she was not living there, Joan Woolman and her family were.

Moreover, they and the rest of their extended family always treated the two lots as one property. In fact, early in her occupancy, Emma Gordy built a fence that enclosed both lots as if they were one property and, she or a member of the family of her daughter, Joan Woolman, paid all of the property taxes and the utility bills for both properties as well as property maintenance costs, as long as they resided there.

---

Although she has remained a party to this dispute, we refer to John Bailiff as the "appellant."

Upon Emma Gordy's death, Jane Woolman became the personal representative of Emma's estate. On June 3, 2000, Lot 1 was sold at an estate auction. The purchaser then re-sold the property to K & W. On July 21, 2000, Jane Woolman, as Personal Representative of Emma's estate, executed a deed conveying Lot 1 to K & W in fee simple. The Estate and K & W believed that K & W was purchasing the improved lot, that is, Lot 3.

After the purchase, K & W made substantial improvements to the house on Lot 3, not knowing that it was not on the parcel of land it had purchased. After spending more than $39,000 on remodeling the house, K & W rented it out and, at some point, had a contract of sale on the property.

Two events then occurred in 2000 which brought the question of who owned Lot 3 to a head. In May 2000, Bessie Bailiff, the holder of the life estate in Lot 3, died, passing ownership of the improved lot, under Olive Lowe's will, to her son, appellant John Bailiff.[3] And then, in November of the same year, K & W, for the first time, had the property surveyed and discovered that the lot it had purchased was the unimproved Lot 1 and that title to the improved Lot 3 was still in the name of Olive Lowe.

To establish ownership of Lot 3, the Estate and K & W ultimately filed a complaint in the Circuit Court for Cecil County, requesting, among other things, a declaration that appellees were the owners in fee simple of both lots, by adverse possession, or, that a constructive trust be imposed on Lot 3 to prevent a mutual mistake of fact from unjustly enriching appellant, John Bailiff. After a bench trial, the circuit court declared that appellees had "prevail[ed] on both theories" and essentially granted all of the relief appellees demanded.

Appellant presents four questions for our review, all of which address the same issue, but from different vantage

---

**3.** Florence Wysong, the other holder of the life estate in Lot 3, had died earlier.

points. That issue is whether the circuit court erred in holding that the Estate was the fee simple owner of Lot 3 by adverse possession and thus had the right to convey the property to K & W.

But adverse possession was not the only grounds upon which the court relied in determining that the ownership of Lot 3 should vest in K & W. In fact, it was only one of two separate grounds upon which the circuit court reached its decision. The other ground was that the equities of the situation required that the court impose a constructive trust on the property and then appoint a trustee to convey Lot 3 to K & W, which it did.

Having declined to ask us to review this aspect of the lower court's decision, appellant has left this Court with little choice but to affirm the circuit court's decision on that ground, without reaching the issues he raises as to adverse possession.

## DISCUSSION

In their complaint, appellees placed the court and appellants on notice that they were seeking to establish their ownership of Lot 3 on three separate grounds: adverse possession, mutual mistake of fact, and unjust enrichment. As to the first ground, they sought a declaration that appellees had acquired title to both lots by adverse possession. As to the second ground, they requested a declaration that "a mistake ha[d] occurred with respect to all parties" and, to correct that mistake, reformation of the deeds to both lots. And, as to the third ground, they asked for a determination that appellant "would be unjustly enriched to the extent of the value of the improvements and sums expended by" appellees. Then, to avoid such "unjust enrichment," appellees requested that a constructive trust be imposed on Lot 3 and that a trustee be appointed to convey that property to K & W.

At the conclusion of a two-day bench trial, appellees stressed that they were seeking relief on more than one ground. "Our second theory of recovery, if the court does not believe ... that adverse possession exists," appellees' counsel

informed the court in closing argument, "would be the constructive trust argument." In fact, after expounding at some length why the court should impose such a trust, he confided to the court, "I think the strongest one, in all honesty, is the constructive trust argument based on a mistake that occurred."

After outlining its reasons for imposing a constructive trust on equitable grounds [4] and then its reasons for holding that appellees had obtained ownership of both lots by adverse possession, the court declared unequivocally that appellees had "prevail[ed] on both theories." The order it thereafter issued reconfirmed the dual basis of its ruling. The court first stated that it was imposing a constructive trust upon Lot 3 for the benefit of K & W and then, only after imposing that trust, did it address the issue of adverse possession, finding that the Estate had thereby obtained ownership of Lot 3.

Yet, appellant chose to disregard the "constructive trust" basis of the court's ruling, challenging, in his brief, only the propriety of the court's "adverse possession" ruling. His unwillingness to address this issue persisted even after appellees urged this Court, in their responding brief, to affirm the decision of the circuit court on either ground: "constructive trust" or "adverse possession." In fact, although appellees devoted most of their brief to their "constructive trust" argument, appellant failed to file a reply brief, *see* Md. Rule 8–502(a)(3), addressing this issue.

Hence, this case presents the question whether appellant's failure to brief and argue one of two grounds for the circuit court's decision requires us to affirm if the unraised ground could serve as an adequate and independent basis for the circuit court's ruling. Although it does not appear that any

---

4. Finding it "unconscionable" for appellant to "re[ap] the benefit" from the construction of the residence, the payment of taxes, insurance, and maintenance for the property, and the remodeling done by K & W because of a "mutual mistake," the court imposed the constructive trust to "prevent unjust enrichment of the holder of the property [*i.e.,* appellant]."

Maryland appellate court has delved into this issue,[5] courts in other states have, including the Court of Appeals of Virginia, which discussed it at length in *Johnson v. Commonwealth*, 45 Va.App. 113, 609 S.E.2d 58 (2005).

In that case, the trial court denied Johnson's motion to suppress heroin that had been found in his possession on two grounds: that the arresting officer "did not exceed the permissible limits of a weapons frisk," and that the heroin "would have been 'inevitably discovered' by the officer even if the weapons frisk had not taken place." *Id.* at 115, 609 S.E.2d 58. But, on appeal, Johnson challenged that decision on only one ground-that "the trial court erred in finding the weapons frisk was within the scope of permissible Fourth Amendment limits." *Id.* at 115–16, 609 S.E.2d 58. As in the instant case, the alternative ground of the trial court's decision was left to the appellee to raise, and, after it did, no reply brief was ever filed. *Id.* at 116 n. 1, 609 S.E.2d 58.

To reverse the trial court's judgment, it would have to, in effect, assume the role of an advocate, the Virginia court demurred. That is to say, it "would have to raise a challenge on Johnson's behalf" to the inevitable discovery ruling, and then marshal reasons to reject that doctrine as a basis for denying his suppression motion. *Id.* at 116, 609 S.E.2d 58. In declining to do so, the court stated: "[S]uch an exercise of *sua sponte* judicial power would impermissibly place us in the role of advocate—far outside the boundaries of our traditional adjudicative duties." *Id.* And it warned that any other ruling would mean that " 'an appellant could avoid the adverse effect of a separate and independent basis for the judgment by ignoring it and leaving it unchallenged.' " *Id.* at 116–17, 609

---

5. Without explanation or invocation of authority, this Court in *University Nursing Home, Inc. v. R.B. Brown & Associates, Inc.*, 67 Md.App. 48, 506 A.2d 268 (1986), held that an appellant's failure to "present argument why the trial court erred in following the alternative grounds [which formed the basis of the trial court's ruling] ... amounts to a waiver" of those grounds, and affirmed the court below. *Id.* at 74, 506 A.2d 268.

S.E.2d 58 (quoting *San Antonio Press, Inc. v. Custom Bilt Machinery,* 852 S.W.2d 64, 65 (Tex.App.1993)).

■ Having rejected Johnson's invitation to engage in what the court believed was a flagrant example of judicial over-reach, the Virginia court announced that it would "join the majority of jurisdictions holding that in 'situations in which there is one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'" *Id.* (quoting *United States v. Hatchett,* 245 F.3d 625, 644–45 (7th Cir.2001)); *see S.C. Tax Comm'n v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 170, 447 S.E.2d 843, 847 (1994) (appellate court "will affirm where an appellant fails to appeal the alternative ground of a trial judge's ruling"); *San Antonio Press,* 852 S.W.2d at 65 ("When a separate and independent ground that supports a judgment is not challenged on appeal, the appellate court must affirm."); *see also Morriss v. Enron Oil & Gas Co.,* 948 S.W.2d 858, 871 (Tex.App.1997) ("Failure to take advantage of the opportunity to present argument on the alternative ground results in waiver."). *See generally* 5 Am.Jur.2d *Appellate Review* § 829 (2006) ("Essentially, therefore, where a separate and independent ground from the one appealed supports the judgment made below, and is not challenged on appeal, the appellate court must affirm."). And so shall we.

But the Virginia court did not end its analysis here; nor shall we. "[W]e still must satisfy ourselves," it declared, "that the alternative holding is indeed the one that (when properly applied to the facts of a given case) would legally constitute a freestanding basis in support of the trial court's decision." 45 Va.App. at 117, 609 S.E.2d 58 (citing *Navajo Nation v. Mac-Donald,* 180 Ariz. 539, 541, 885 P.2d 1104, 1106 (1994) (concluding that the alternative holdings "are sufficient to support the judgment" against the appellant); *Career Builders, Inc. v. S. Indus. Builders, Inc.,* 149 Ga.App. 392, 254 S.E.2d 508, 509 (1979) (affirming trial court's judgment because the alternative ground was "sufficient on its face to support the judgment

rendered"); *Britton v. Tex. Dep't of Crim. Justice,* 95 S.W.3d 676, 681 (Tex.App.2002) (holding that the "unchallenged independent ground fully supports the complained-of ruling or judgment")). But, in determining whether the inevitable discovery doctrine "serves as an adequate and independent legal basis" for the trial court's ruling, it would not, it asserted, "review the record to determine whether the trial court properly applied the doctrine to the factual circumstances of this case," because Johnson had "waived that issue by not raising it on appeal." *Id.* at 118, 609 S.E.2d 58.

We believe the Virginia court's two-step approach to the problem is a sound one and consequently shall take the same approach in the instant case. Having found that appellant failed to challenge the alternative ground of the trial court's decision, we turn to the question of whether that ground provided an adequate and independent legal basis for granting judgment in favor of appellees. We conclude that it did. Indeed, "[i]t seems well-settled in Maryland that a constructive trust will be imposed to avoid unjust enrichment arising out of mistake in the absence of fraud, the violation of any fiduciary duty or any other wrongdoing." *Md. Nat. Bank v. Tower,* 374 F.2d 381, 383–84 (4th Cir.1967). The reasoning underlying this rule was succinctly set forth almost a century and a half ago in *Hartsock v. Russell,* 52 Md. 619, 626 (1879):

As has been well said, a court of equity would be of little value, if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs, contrary to the real intention of the parties. It would be to allow an act, originally innocent, to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake, to resist the claims of justice, under the shelter of statutes framed to promote it.

Having concluded that the constructive trust doctrine provided an adequate and independent basis for the circuit court's decision, we do not reach the question of whether it was properly applied in this case because appellant, by failing to raise this issue, has waived it. *See Johnson,* 45 Va.App. at

117–18, 609 S.E.2d 58. Nor do we reach the merits of the adverse possession ruling because such an analysis would, in effect, constitute an advisory opinion on a subject no longer relevant to the disposition of this case.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**