274

65 A.3d 185

Alicia YOUMANS

v.

DOURON, INC.

No. 1981, Sept. Term, 2010.

Court of Special Appeals of Maryland.

May 1, 2013.

Maryland State Bar Ass'n, MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS 4:10:5 (2nd ed. 2012).

Bruce M. Bender (Axelson, Williamowsky, Bender & Fishman, PC, on the brief), Rockville, MD, for Appellant.

Kristine R. Zenkewicz (Franklin & Prokopik, PC, on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., KEHOE and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

KRAUSER, C.J.

While working at the Montgomery County Department of Environmental Protection ("MC–DEP"), Alicia Youmans, appellant, was injured, when a desk upon which she was leaning, collapsed. After filing a workers' compensation claim, Ms. Youmans brought an action, in the Circuit Court for Montgomery County, against Douron, Inc., the supplier of that piece of furniture, for breach of contract, claiming that she was an intended third-party beneficiary of the furniture pro-

curement contract under which the desk had been provided by that company to the MC–DEP.

Two amended complaints—whose timeliness are the subject of this appeal—followed: The first amended complaint abandoned the breach of contract claim, in favor of a claim for the breach of implied warranties of merchantability and fitness for a particular purpose,[1] while the second added a claim for negligence, rendering it, in final form, a two-count complaint, that is, a suit for breach of warranty and negligence. Ultimately, both of these counts were dismissed by the Montgomery County circuit court as time-barred, terminating her lawsuit.

On appeal, Ms. Youmans contends that the circuit court erred, in both holding that her warranty claim is barred by limitations and that her negligence claim does not relate back to the filing of her initial complaint and, thus, is also time-barred. We agree but only in part. We hold that, as the circuit court found, Youmans's warranty claim is time-barred but, contrary to what that court ruled, her negligence claim does relate back to her initial complaint and, thus, remains viable. Consequently, we affirm in part, reverse in part, and remand for further proceedings.

**Background**

On December 28, 2005, Douron, Inc., a supplier of office furniture, delivered the desk in question and other office furniture, pursuant to a furniture supply contract it had with the Montgomery County Department of Environmental Protection ("MC–DEP"), to an MC–DEP office in Rockville,

---

1. The amended complaints allege, in a single count, that "Douron, Inc. breached implied warranties of merchantability and fitness ..." Presumably, the warranty of fitness to which those complaints refer is the implied warranty of fitness for a particular purpose, since, in paragraph 12 of her amended complaints, Youmans alleges that Douron, Inc. "held itself out to the public as possessing superior knowledge and skill in use of office furniture" and that "MC–DEP relied upon this knowledge and skill ... in selecting the furniture" to be installed, allegations which track the UCC definition of implied warranty of fitness for a particular purpose. *See* Md.Code (1975, 2002 Repl.Vol.), § 2–315 of the Commercial Law Article.

Maryland. Upon delivery, employees of Douron, Inc., assembled the desk. Nearly fourteen months later, on February 15, 2007, the desk collapsed when Youmans, an MC–DEP employee at the Rockville office, in her words, "slightly leaned" against it. The collapse caused her to fall and suffer what she described as "severe personal injuries."

Later that year, Ms. Youmans filed a workers' compensation claim. Then, precisely three years and one day after the date of her injury, on February 16, 2010, Youmans filed an action against Douron, Inc., in the circuit court, alleging that she was an "intended" third-party beneficiary of the furniture procurement contract between Douron, Inc., and MC–DEP and that, as a result of Douron's breach of that agreement, she sustained personal injuries. When Douron, Inc., moved to dismiss her complaint for failure to state a claim upon which relief can be granted, Youmans, more than four years after the delivery and installation of the desk, filed her first amended complaint, which abandoned the breach of contract claim, alleging instead that Douron, Inc., had impliedly warranted that the desk it provided was merchantable and fit for a particular purpose, that she was a third-party beneficiary of those implied warranties, and that, as consequence of Douron's breach of warranties, she sustained personal injuries. Then, in response to yet another of Douron's motions to dismiss, on May 28, 2010, more than three years and three months after the accident, Youmans filed a second amended complaint, adding a count for negligence to her suit.

After a hearing, the circuit court granted Douron's motion to dismiss, holding that the breach of warranty count is barred by the four-year statute of limitations in § 2–725 of the Maryland Uniform Commercial Code ("Maryland UCC")[2] and that, as the negligence count, in the court's view, does not relate back to her initial complaint, it too is time-barred. Since those rulings disposed of all of her claims, the grounds for this appeal were laid.

---

**2.** Maryland Code (1975, 2002 Repl.Vol.), §§ 1–101 through 10–112 of the Commercial Law Article.

## Discussion

■ Because the circuit court, in ruling on Douron's motion to dismiss, considered matters outside Youmans's final complaint—specifically, the exhibits attached to the motion requesting dismissal—we construe the ruling below as a grant of summary judgment. Md. Rule 2–322(c) (stating that if, "on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment").

We therefore turn to the rule governing summary judgment, Maryland Rule 2–501. Subsection (f) of that rule provides that, upon a party's motion for summary judgment, a court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." As there was no dispute below as to any material fact,[3] we proceed to the question of whether Douron, Inc., was "entitled to judgment as a matter of law." To answer that question, we conduct a review de novo of the legal determinations by the circuit court, which are the subject of this appeal. *Frazier v. Castle Ford, Ltd.*, 200 Md.App. 285, 294, 27 A.3d 583 (2011).

---

**3.** There does appear to be a factual inconsistency in the briefs as to the date when the office furniture at issue was delivered and installed. Youmans alleges, in her complaints as well as in her brief before this Court, that the office furniture at issue was delivered and installed in "early 2007." Douron, Inc., attached, to its final motion to dismiss, copies of delivery tickets and an affidavit from its Vice President, indicating that the delivery and installation of that furniture actually occurred on December 28, 2005, not in early 2007. Since a party opposing summary judgment must produce "more than general allegations which do not show facts in detail and with precision," to demonstrate the existence of a genuine dispute of material fact and thereby defeat a motion for summary judgment, and Youmans failed to do so at the motions hearing, the circuit court correctly relied upon Douron, Inc.'s, documentary evidence. *Rite Aid Corp. v. Hagley*, 374 Md. 665, 684, 824 A.2d 107 (2003) (citation and quotation omitted).

## I.

### *Breach of Warranty*

Section 2–725 of the Maryland UCC imposes a four-year statute of limitations upon an action for breach of any contract for the sale of goods. Although Ms. Youmans's amended complaints allege a breach of implied warranty and thus are subject, under that section of the Maryland UCC, to its four-year statute of limitations, Ms. Youmans claims that, because she filed a workers' compensation claim for work-related injuries, she had an additional two months in which to file her breach of warranty claim under § 9–902 of the Labor & Employment Article ("LE"),[4] a provision of the Maryland Workers' Compensation Act.[5]

When two months are added to the time in which she had to file her breach of warranty claim, she had until February 28, 2010, Youmans points out, to file her breach of warranty action, as the desk was delivered and installed on December 28, 2005. Although she did not meet that deadline, Youmans maintains that, because she did file her initial complaint twelve days before that date and because her final complaint purportedly relates back to her initial complaint, her breach of warranty claim was timely filed.

Douron, Inc., responds that, because LE § 9–902 of the Maryland Workers' Compensation Act applies to tort and not contract claims, it does not and cannot extend, by two months, the period for filing a breach of warranty claim. Youmans counters, however, that, even if Douron, Inc., is correct in its claim that LE § 9–902 extends to only tort claims, the "line between contract and tort" is so "blurred in … Maryland" that an action alleging a breach of an implied warranty, in effect, so "closely resembles an action in strict liability, a tort," that no rational distinction can be drawn between implied

4. Maryland Code (1991, 2008 Repl.Vol.), § 9–902 of the Labor & Employment Article.

5. Maryland Code (1991, 2008 Repl.Vol.), §§ 9–101 through 9–1201 of the Labor & Employment Article.

warranty and strict tort liability for purposes of LE § 9–902
and its two-month tolling period. Then, citing cases from
other jurisdictions, she suggests that there is no essential
distinction between an action for breach of an implied warran-
ty and a tort action based on strict liability. In fact, she goes
so far as to maintain that the damages she sought for her
personal injuries were actually "tort based," though couched in
terms of a breach of warranty in her pleadings. But her
argument does not end here.

Ms. Youmans further contends that the abolition of the
privity requirement by the Court of Appeals in breach of
warranty actions, when personal injury is alleged, *see Frericks
v. General Motors Corp.*, 278 Md. 304, 363 A.2d 460 (1976),
confirms their tort-like nature. And thus, her warranty ac-
tion, she reasons, was not a contract claim but, a tort claim or,
"at an absolute minimum," a "hybrid tort-contract action."
That being so, the applicable statute of limitations for her
warranty claim, she claims, is set forth in § 5–101 of the
Courts & Judicial Proceedings Article ("CJ"),[6] the general
three-year statute of limitations for civil actions. That statute,
although shorter by a year than the four-year statute of
limitations of § 2–725 of the Maryland UCC, would, if applica-
ble, have given her an additional fourteen months in which to
file her suit, because the three-year limitations period for her
"tort" claim would have begun to run from the date of injury,
February 15, 2007, and not from the date of delivery of the
office furniture, December 28, 2005, as Maryland UCC § 2–
725 provides.

Finally, she maintains, because her self-described "tort"
claim was subject to the tolling provision in LE § 9–902, she
had three years and two months from the date of injury,
February 15, 2007, to file her claim or, to be more specific, she
had until April 15, 2010, to do so. Since her initial complaint

---

**6.** Maryland Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts &
Judicial Proceedings Article provides: "A civil action at law shall be
filed within three years from the date it accrues unless another provi-
sion of the Code provides a different period of time within which an
action shall be commenced."

was filed two months earlier, on February 16, 2010, and her amended complaints, purportedly, relate back to the initial complaint, Youmans claims that her breach of warranty claim was timely.

We begin our review of Youmans's claims by first considering the extent to which LE § 9–902, which extends the limitations period for an additional two months, is applicable to her claims. For reasons we shall explain, that section applies only to tort, not to contract claims. Consequently, we find no merit to Ms. Youmans's first claim, that she had four years and two months from the date of delivery, December 28, 2005, to bring her breach of warranty action. Nor do we find any merit to her contention that a breach of warranty is so "tort-like" that it should be governed by the general three-year statute of limitations for civil actions, CJ § 5–101, under which limitations would have run from the date of injury, February 15, 2007, and, when augmented by the two-month tolling provision of LE § 9–902 for tort claims, would have had the effect of rendering her breach of warranty claim timely.

## A.

■ LE § 9–902, which is part of the Maryland Workers' Compensation Act, provides, among other things, that, if a claim is filed and "compensation is awarded or paid," then "a self-insured employer, an insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund," but not a "covered employee," [7] "may bring an action for damages against the third party who is liable for the injury." *Id.* § 9–902(a). But if any of these entities "does not bring an action against the third party within 2 months after the [Workers' Compensation] Commission makes an award," based on a previously filed workers' compensation claim by a covered employee, then

---

7. A "covered employee," under the Maryland Workers' Compensation Act, is defined as "an individual listed in Subtitle 2 of this title for whom a person, a governmental unit, or a quasi-public corporation is required by law to provide coverage under this title." LE § 9–101. It is undisputed that Ms. Youmans was, at the time of her injury, a "covered employee."

the covered employee may "bring an action for damages against the third party." *Id.* § 9–902(c).

If, after the expiration of that two-month period, during which a covered employee is barred from initiating a third-party action, that employee then brings an action pursuant to LE § 9–902(c), the limitations provision of LE § 9–902(d) applies. It states:

The period of limitations for the right of action of a covered employee or the dependents of the covered employee against the third party does not begin to run until 2 months after the first award of compensation made to the covered employee or the dependents under this title.

A literal reading of this provision suggests that the period of limitations begins to run two months after the date that a covered employee receives his or her first award of compensation. Such a reading, however, would be in error, as the Court of Appeals explained in *Smith v. Bethlehem Steel Corp.,* 303 Md. 213, 492 A.2d 1286 (1985).

In that case, the Court was asked to construe similar language, in the statutory antecedent of LE § 9–902(d), former Article 101, § 58, ¶ 2.[8] That paragraph of Article 101, § 58 stated:

When any employee has a right of action under this section against a third party, the period of limitations for such action, as to such employee, shall not begin to run until two months after the first award of compensation made to such employee under this article, and this section shall apply to past and future rights of action under this section.

Md.Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 101, § 58, ¶ 2. The *Smith* Court held that "this paragraph," that is, as noted, paragraph "2," "tolls the running of unexpired limitations," *Smith,* 303 Md. at 216, 492 A.2d 1286, during the

---

8. When the Labor & Employment Article of the Code was created, through enactment of chapter 8 of the 1991 Maryland Laws, former Article 101, § 58, was re-cast into three separate statutes, §§ 9–901 through 9–903 of the Labor & Employment Article.

"two months after award when the employee is excluded from instituting a third-party action." *Id.* at 229, 492 A.2d 1286.

As we later observed, in *Hayes v. Wang,* 107 Md.App. 598, 600 n. 1, 669 A.2d 771 (1996), there is no "substantive" difference between former Article 101, § 58, ¶ 2, and LE § 9–902(d), and we therefore conclude that the latter, like its legislative antecedent, tolls the applicable statute of limitations during the "two months after award when the employee is excluded from instituting a third-party action." *Smith,* 303 Md. at 229, 492 A.2d 1286.

To determine the kinds of actions to which the two-month tolling provision of LE § 9–902 applies, we look to the preceding section of the Maryland Workers' Compensation Act, that is, LE § 9–901, which recognizes a covered employee's right to proceed against a third party. It suggests that, with respect to a claim against a third party for injuries sustained at work, the two-month tolling provision applies only to tort actions, stating:

> When a person other than an employer is liable for the injury or death of a covered employee for which compensation is payable under this title, the covered employee or, in case of death, the personal representative or dependents of the covered employee may:
>
> (1) file a claim for compensation against the employer under this title; or
>
> (2) bring an action for damages against the person liable for the injury or death or, in case of joint *tort feasors,* against each joint *tort feasor.*

LE § 9–901 (emphasis added).

Because LE § 9–901 expressly states that it applies to "an action for damages against the person liable for the injury or death or, in case of joint tort feasors, against each joint tort feasor," we observe that this section of the Maryland Workers' Compensation Act, by its own terms, applies to tort and not contract actions. In addition to the very words of LE § 9–901, the Court of Appeals has said as much in *Erie Insurance Co. v. Curtis,* 330 Md. 160, 623 A.2d 184 (1993). There, an

employee named Curtis was injured, during the course of his employment, in an automobile accident with another driver. The driver of that other vehicle was uninsured. After his employer's workers' compensation carrier, Erie Insurance Company, paid his workers' compensation claim, Curtis brought a breach of contract action against his employer's automobile insurance carrier, Nationwide Mutual Insurance Company, seeking to collect payment under the uninsured motorist provision of his employer's policy.

In that action, Erie intervened as a plaintiff, to advance its claim of a lien, under former Article 101, § 58 (which, as noted earlier, is the statutory predecessor of LE §§ 9–901 through 9–903) on any amount awarded to Curtis under his employer's uninsured motorist insurance. But, upon Curtis's motion, the circuit court rejected Erie's claim and dismissed Erie Insurance as a party to the suit.

The Court of Appeals affirmed, holding that "Erie, as a workers' compensation carrier, ha[d] no claim against the proceeds of Curtis's contract action against Nationwide." 330 Md. at 169, 623 A.2d 184. It reasoned that Article 101, § 58, "refers solely to an action against a third party tort-feasor" and not to contract actions by " 'persons covered under insurance policies, against their insurers, for benefits under so-called first party coverages such as PIP or uninsured motorist.' " *Id.* (quoting *Ward v. Nationwide Mut. Auto. Ins. Co.,* 328 Md. 240, 246, 614 A.2d 85 (1992)).

Given that LE §§ 9–901 through 9–903 are a re-codification of former Article 101, § 58; that, furthermore, § 58 of the original Maryland Workers' Compensation Act, Article 101, and its statutory successor are, for the most part, substantively identical; and finally, that the re-codification of a statute "is presumed to be for the purpose of clarity rather than change of meaning," *Allen v. State,* 402 Md. 59, 71, 935 A.2d 421 (2007); we conclude that LE § 9–902, like former Article 101, § 58, applies only to tort claims and thereby dispose of Youmans's first claim that LE § 9–902 of the Maryland Work-

ers' Compensation Act applies to contract as well as tort actions.

## B.

■ We next consider Ms. Youmans's contention that her warranty claim is, in essence, a tort claim and not one of contract. If her contention were true, the applicable statute of limitations for that claim would be the general three-year statute of limitations for civil actions, CJ § 5–101, and not the four-year statute of limitations, § 2–725 of the Maryland UCC. But Ms. Youmans would, paradoxically, benefit from the shorter statute of limitations because her claim would not have accrued until the date of her injury, which, as we shall explain, is nearly fourteen months later than when it would have accrued under § 2–725 of the Maryland UCC. Moreover, if her contention were true, the two-month tolling period of LE § 9–902 of the Maryland Workers' Compensation Act, which has just endured our explication, would apply to that claim. That would render count I of her second amended and ultimate complaint, which alleges a breach of the implied warranties of merchantability and fitness for a particular purpose, timely.

In support of this contention, Youmans relies primarily on extraterritorial decisions, voicing the view that an action for breach of implied warranty is essentially indistinguishable from an action based on strict liability in tort and therefore, both actions should be treated the same for limitations purposes. *See, e.g., La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984) ("[I]mplied warranties are created by operation of law and are grounded more in tort than in contract."); *Cottom v. McGuire Funeral Serv., Inc.,* 262 A.2d 807, 808 (D.C.1970) ("The differences between strict liability in tort and implied warranty, if any, are conceptual."); *Wallace v. Parks Corp.,* 212 A.D.2d 132, 138, 629 N.Y.S.2d 570 (N.Y.App.Div.1995) ("It should also be noted that, since the elimination of privity to support an action for breach of implied warranty, there is little, if any, difference at

present between an action for strict products liability and one for breach of implied warranty.") (citations omitted).

But none of those decisions actually address the issue before us, namely, whether the same statute of limitations does, or at least should, apply to both a claim for a breach of warranty and a claim for strict liability in tort because of some similarities the two claims share. In fact, not only are those cases not on point, but, even if they did address this issue, Youmans's expansive interpretation of those decisions brings them into direct conflict with a body of Maryland decisional law, declaring, unequivocally, that breach of implied warranty and strict liability in tort are two separate and distinct claims in Maryland. *See, e.g., A.J. Decoster Co. v. Westinghouse Elec. Corp.,* 333 Md. 245, 246, 634 A.2d 1330 (1994) (observing that, as to actions alleging breach of warranty under the UCC, "there [are] other limitations imposed by contract law which [do] not exist under tort law"); *Phipps v. General Motors Corp.,* 278 Md. 337, 349, 363 A.2d 955 (1976) (commenting that "there still remain various other requirements and limitations imposed by contract law which may be encountered when pursuing an action for breach of warranty but not when seeking damages for injury caused by a defective product under the theory of strict liability in tort").

The application of this principle in *Phipps v. General Motors Corp.* provides a template for our analysis. In *Phipps,* a products liability case, the Court of Appeals adopted the strict liability formula articulated in *Restatement (Second) of Torts* § 402A, notwithstanding General Motors' insistence, among other things, that because "the warranty provisions of the Maryland Uniform Commercial Code and the doctrine of strict liability in tort are substantially the same in protecting the interests of both consumers and sellers," there was "no need to adopt the theory of strict liability." *Id.* at 348, 363 A.2d 955. In rejecting that argument, the Court of Appeals drew a number of distinctions between these two legal theories of recovery. It contrasted, among other things: the ability of a seller, under the Maryland UCC, to limit or disclaim warranties where the goods sold are not consumer goods, with the

ineffectiveness of any such limitation or disclaimer in a tort case, under *Restatement (Second) of Torts* § 402A, comment m, *see Phipps*, 278 Md. at 349, 363 A.2d 955; the requirement that the buyer, in a breach of warranty case, must give the seller notice of the breach, as a condition precedent for maintaining a breach of warranty action, with the absence of such a requirement in a tort action based on strict liability, *id.* at 349–50, 363 A.2d 955; and, of particular relevance to the case before us, the four-year period of limitations for breach of warranty with the three-year limitations period for strict liability in tort:

> [A]n action for breach of warranty is governed by the limitations period contained in § 2–725 of the Uniform Commercial Code, which provides that an action must be brought within four years of the time it accrues.... An action under the theory of strict liability in tort, however, would be governed by the general tort limitations period, Maryland Code (1974), § 5–101 of the Courts and Judicial Proceedings Article, which is three years but may begin to run at a later time.

*Id.* at 350, 363 A.2d 955.

Count I of Youmans's final complaint alleges a breach of implied warranties of merchantability and fitness for a particular purpose, claims which, under Maryland law, sound in contract, not in tort. *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 461 n. 22, 601 A.2d 633 (1992). Moreover, as the purpose of the furniture procurement contract at issue (from which those implied warranties arose) was the sale of goods, specifically the sale of the office furniture by Douron, Inc. to MC–DEP, and the assembly of that furniture was only "incidental[ ]" to its sale, the contract and any warranties it creates are governed by the Maryland UCC. *See Burton v. Artery Co.*, 279 Md. 94, 114–15, 367 A.2d 935 (1977) (holding that "hybrid" contract involving both labor and sale of goods is governed by Maryland UCC where "the predominant factor ..., the thrust, the purpose, reasonably stated, is a transaction of sale with labor incidentally involved").

■ As a consequence, count I, the breach of warranty count, is governed by the four-year period of limitations set forth in § 2–725 of the Uniform Commercial Code, *Phipps,* 278 Md. at 350, 363 A.2d 955; *accord Frericks, supra,* 278 Md. at 316, 363 A.2d 460 ("The four year period of limitations in § 2–725 is fully applicable to actions by injured third party beneficiaries" in breach of warranty actions.), which states that an "action for breach of any contract for sale must be commenced within four years after the cause of action has accrued," Md. UCC § 2–725(1); and under the succeeding subsection of the Maryland UCC, § 2–725(2), such an action accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach"; and, finally, a breach occurs "when tender of delivery is made." *Id.* § 2–725(2).

It is undisputed that the furniture was delivered as well as installed on December 28, 2005. Because Youmans's final complaint was filed on May 28, 2010, more than four years after Youmans's action for breach of warranty accrued, that complaint's breach of warranty count (count I) was untimely, unless, of course, it relates back to an earlier complaint, filed within four years of accrual. Unfortunately for Ms. Youmans, the complaint to which it relates back (her initial complaint) was docketed on February 16, 2010, more than four years after the action for breach of warranty had accrued. Thus, count I was barred by the applicable statute of limitations, that is, § 2–725 of the Maryland UCC, as the court below held.

## II.

### *Negligence*

Ms. Youmans contends that her negligence claim accrued on February 15, 2007, the date of her injury, and that, under the three-year statute of limitations of CJ § 5–101, plus the two-month tolling provision of LE § 9–902, she was required to file a complaint by no later than April 15, 2010. Although that did not occur, she nonetheless insists that her negligence claim

was timely, asserting that, even though her negligence claim was first alleged in count II of her final complaint, filed on May 28, 2010, that claim was timely, as it relates back to her initial complaint, filed on February 16, 2010.

To be more precise, because there is no dispute between the parties regarding when Youmans's negligence claim accrued, the statute of limitations that applied, or the effect of LE § 9–902, the only issue before us is whether the negligence claim in her final complaint relates back to her initial complaint, as Youmans's initial complaint was the only one of the three that she filed that was docketed before the expiration of the relevant period of limitations on April 15, 2010. Before addressing this issue, however, it is incumbent upon us to first specify the test to be used in determining whether an amendment relates back to an earlier pleading.

## A.

The Maryland Rules of Civil Procedure, unlike the Federal Rules, lack an express provision, governing the "relation back" of amendments to prior pleadings. *See* Md. Rule 2–341 (governing amendments to pleadings). But Maryland courts do, nonetheless, recognize and apply such a precept, *see, e.g., Crowe v. Houseworth*, 272 Md. 481, 485–86, 325 A.2d 592 (1974), though it is narrower in scope than its federal counterpart.[9] To be more specific, Federal Rule of Civil Procedure 15(c) states that an amendment relates back, for limitations purposes, if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading," Fed. R.Civ.P. 15(c)(1)(B), while Maryland caselaw suggests that an

---

9. *See, e.g.,* John A. Lynch, Jr. & Richard W. Bourne, *Modern Maryland Civil Procedure* § 6.8 at 6–86 (2d ed. 2004) (observing that application of Federal Rule of Civil Procedure 15(c) "would probably have" resulted in a finding that a subsequent pleading related back, while application of the Maryland rule did not); *id.* at 6–88 (observing that "[u]nless the federal approach replaces that of [some Maryland cases], plaintiff's counsel should bear in mind the limited flexibility with respect to amendment after the statute of limitations of the Maryland approach").

amendment relates back to a prior pleading, "so long as the operative factual situation," stated in the amended pleading, "remains essentially the same" as that alleged in the prior pleading. *Crowe,* 272 Md. at 485–86, 325 A.2d 592. In other words, "so long as the operative factual situation" remains "essentially the same," a "new cause of action" is not introduced by an amendment which merely sets forth "a new theory" or invokes "different legal principles." *Id.*

Unfortunately, that does not end our discussion as to the nature and scope of Maryland's "relation back" test, as there is a line of Maryland decisions that employ a "relation back" test based on the doctrine of res judicata. Illustrative of that string of cases is *Cline v. Fountain Rock Lime & Brick Co.,* a case which sparked two successive appeals, 210 Md. 78, 122 A.2d 449 (1956) (*Cline I* ), and 214 Md. 251, 134 A.2d 304 (1957) (*Cline II* ), before it finally concluded.

Fountain Rock Lime and Brick Company, the owner of a limestone quarry in Frederick County, wanted to participate in "an extensive road building program," which was "about to get under way" there. Because Fountain Rock lacked the necessary equipment and capital to bid on any of the road building projects, its majority owner, John W. Quynn, sought the assistance of Earl H. Cline, a local general contractor, who "was in a position to get such business." *Cline II,* 214 Md. at 253–54, 134 A.2d 304. The two men then made "some arrangement relating to the use by Cline of stone from the Fountain Rock quarry" in one or more of the road building projects. *Id.* at 254, 134 A.2d 304.

They later disagreed, however, about the scope of that "arrangement." *Cline I,* 210 Md. at 83, 122 A.2d 449. According to Fountain Rock, the two men (with Quynn acting on behalf of Fountain Rock) had orally agreed to a lease of Fountain Rock's land and equipment, as well as to form a joint venture, under which the two would "go ahead in the stone business" and share equally in the profits Cline earned in performing work as a subcontractor for the Conduit Company, which had a road construction contract with the State Roads

Commission. *Cline II*, 214 Md. at 255, 134 A.2d 304. "The precise terms of the joint [ ]venture agreement [were] not shown," however, and "[a]ctual practice" seemed to have been "that Cline paid for all stone which he took from Fountain Rock for other jobs." *Cline I*, 210 Md. at 84, 122 A.2d 449. In any event, "no stone whatever from Fountain Rock was actually used on the Conduit contract." *Id.* at 84–85, 122 A.2d 449.

Dissatisfied with the amount Cline had paid for the stone, Fountain Rock brought an action against Cline, alleging that Cline and Fountain Rock (Quynn) had "agreed" that he, Cline, would lease Fountain Rock's "real estate, plant and equipment" and "to pay," for that rental, "a percentage of profit with guaranteed minimum amount" but that Cline had breached that agreement by failing to make any such payment. *Cline II*, 214 Md. at 254, 134 A.2d 304.

Upon Cline's demand for a bill of particulars, Fountain Rock provided him with a proposed written lease agreement, which had not been signed by Cline. *Id.* Under the terms of that unexecuted lease, Cline was to pay Fountain Rock "5% of the selling price of stone" taken from the Fountain Rock facility, but no mention was made, in that proposed agreement, of any profit-sharing arrangement. *Cline I*, 210 Md. at 86, 122 A.2d 449. Nonetheless, after the parties rested, the trial court instructed the jury that it could consider, as damages, a share of the profits earned by Cline in his role as a subcontractor in the Conduit Company road construction project. *Id.* at 91, 122 A.2d 449. When the jury found in favor of Fountain Rock and awarded it damages, Cline appealed. The Court of Appeals reversed and remanded for a new trial, principally because the damages awarded were based upon claims not covered by Fountain Rock's bill of particulars. *Id.* at 91–93, 122 A.2d 449.

Upon remand, Fountain Rock amended its original "declaration," [10] adding, to its claim of an oral lease agreement, a claim

---

**10.** This action, having been brought before the 1984 re-codification of the Maryland Rules, referred to a "complaint" as a "declaration."

that the parties had entered into an oral agreement to form a joint venture. Cline interposed a limitations defense, asserting that the amended declaration was an attempt to introduce a new cause of action which had not "accrue[d] within three years of the filing of the amended declaration." *Cline II*, 214 Md. at 257, 134 A.2d 304.

The trial court held that the amendment was not time-barred. When the case was sent to the jury, it, by a special verdict, found that, although there was no oral lease agreement between the parties, there was an oral joint venture agreement between them and that Cline had breached that agreement and awarded Fountain Rock $9,125 in damages. *Id.* at 253, 134 A.2d 304. Cline then launched his second appeal.

The Court of Appeals reversed but, this time, did not remand. It began its analysis with the observation that the jury's finding that there had been no oral lease agreement narrowed the questions before it to one: whether the amendment, adding the claim that the parties had entered into an oral agreement to form a joint venture, related back to the original claim that there had been an oral lease agreement. *Id.* at 257, 134 A.2d 304. After rejecting the transactional approach of Federal Rule of Civil Procedure 15(c), the Court promulgated a test based upon the doctrine of res judicata. Specifically, that test was whether "a judgment in favor of" the plaintiff "on one [pleading] would preclude a suit on the other," or, in other words, whether "evidence which would support" the amended declaration "would support the other," original declaration. *Id.* at 265, 134 A.2d 304. In applying that test, the Court opined that

> a lease of real estate, plant and equipment is a very different contract from a joint adventure agreement. Though the conversations between Messrs. Quynn and Cline might have resulted in either and to that extent a suit based upon either may be said in the words of F.R.C.P. 15(c) to

*University Nursing Home, Inc. v. R.B. Brown & Assocs., Inc.,* 67 Md. App. 48, 55 n. 2, 506 A.2d 268 (1986).

have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," we think that it cannot be said that the evidence which would support the one would support the other, that a judgment in favor of Cline on one would preclude a suit on the other, or that to substitute a contract to go into business with another as joint adventurers is merely to place a correct legal interpretation upon a conversation previously said to have resulted in an oral lease.

*Id.* at 265, 134 A.2d 304.

Several subsequent decisions of this Court have employed this test. *Kirgan v. Parks*, 60 Md.App. 1, 15, 478 A.2d 713 (1984) (declaring that "if evidence which would support the amended declaration would support the original, that is, if judgment for the plaintiff on the amended declaration would bar suit on the original, the amendment does not set out a new cause of action and, therefore, is not barred by limitations"); *Walls v. Bank of Glen Burnie*, 135 Md.App. 229, 240–41, 762 A.2d 151 (2000) (observing that we must "analyze[ ] the question whether a newly stated claim relate[s] back to an originally stated claim by examining whether a judgment entered on the first claim would have had a preclusive effect, under the doctrine of res judicata, on the second claim") (citing *Cline II*, 214 Md. at 265, 134 A.2d 304).

But the problem with using the doctrine of res judicata as a touchstone for relation back is that, thirty years after *Cline II* was decided, the Court of Appeals appeared to disapprove of the "same evidence" test, which *Cline II* articulated, for the purpose of determining when a prior final judgment has preclusive effect. *Kent Cnty. Bd. of Educ. v. Bilbrough*, 309 Md. 487, 494–501, 525 A.2d 232 (1987). The consequence of this departure, whether intended or not, was to sever impliedly the test for "relation back" from any connection it might have had with that for res judicata, though the *Bilbrough* Court never actually addressed the "relation back" issue.[11]

11. It appears that the law of claim and issue preclusion was somewhat unsettled in Maryland during the thirty-year time period between *Cline*

Observing in *Bilbrough* that "sole reliance on the same evidence or required evidence analysis to determine if the same claim is involved in two actions may improperly narrow the scope of a 'claim' in the preclusion context," 309 Md. at 494, 525 A.2d 232, the Court of Appeals adopted a broad, transactional test to define what a "claim" is for purposes of when a prior final judgment has preclusive effect, namely, the rule as articulated in *Restatement (Second) of Judgments* § 24 (1982) ("Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning 'Splitting' "):

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.[12]

---

*v. Fountain Rock Lime & Brick Co.*, 214 Md. 251, 134 A.2d 304 (1957) (*Cline II* ) and *Kent County Board of Education v. Bilbrough*, 309 Md. 487, 525 A.2d 232 (1987). For instance, in *Davis v. Frederick County Board Of County Commissioners*, 25 Md.App. 68, 77–78, 334 A.2d 165 (1975), Judge Rita C. Davidson, then a member of this Court, observed that there were at least six different tests for determining "whether two suits are based upon the same 'cause of action' " for purposes of res judicata, including the test articulated in *Cline II*, which the *Davis* Court stated was "[w]hether the same evidence would sustain both judgments," but, apparently, not including the transactional test which the Court of Appeals would subsequently adopt in *Bilbrough*.

**12.** *Restatement (Second) of Judgments* § 18 (1982) ("Judgment for Plaintiff—The General Rule of Merger"), cited with approval by the Court of Appeals in footnote 5 in *Kent County Board of Education v. Bilbrough*, 309 Md. 487, 498 n. 5, 525 A.2d 232 (1987), states:

When a valid and final personal judgment is rendered in favor of the plaintiff:
(1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and
(2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.
*Restatement (Second) of Judgments* § 19 (1982) ("Judgment for Defendant—The General Rule of Bar"), cited in the same footnote 5, states:

As the Court observed in a later decision, "a judgment between the same parties or their privies upon the same cause of action is conclusive 'not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.'" *FWB Bank v. Richman*, 354 Md. 472, 493, 731 A.2d 916 (1999) (quoting *Alvey v. Alvey*, 225 Md. 386, 390, 171 A.2d 92 (1961)).

In other words, if the test for determining whether an amendment "relates back" to a previous pleading ever actually was "whether a judgment entered on the first claim would have had a preclusive effect, under the doctrine of res judicata, on the second claim," *Walls*, 135 Md.App. at 241, 762 A.2d 151, a standard, which may have been followed at the time when *Cline II* was decided (but only under an older, narrower, and since-rejected res judicata standard), that formulation of the "relation back" test cannot stand today, under the broad, transactional definition of "claim" for purposes of res judicata, as articulated in *Bilbrough* and subsequent cases. Indeed, a reader, without understanding the historical development of claim preclusion in Maryland decisional law, could easily misinterpret the language in *Cline II, Kirgan,* and *Walls,* and mistakenly conclude that the Maryland test for "relation back" is whether the amended pleading and the original pleading arise from "the [same] transaction, or series of connected transactions." *Restatement (Second) of Judgments* § 24.

Under such a misapprehension, it would appear that the Maryland "relation back" test is, in effect, the same as the test under Federal Rule of Civil Procedure 15(c)(1)(B), that is, whether "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." But, in *Cline II,* the Court, notwithstanding its earlier inclination to establish res judicata as at least one test of "relation back," specifically pointed out that the amendment, under consideration in that case, would have related back, under Federal

---

A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.

Rule of Civil Procedure 15(c)'s transactional test, but that, under its own test, it did not. 214 Md. at 265, 134 A.2d 304.

More than twenty years after *Cline II* was decided, the Court of Appeals considered, once again, the question of what test should apply in determining whether an amended pleading "relates back" to an earlier one. But this time, it was in the context, not of a particular case but, in the course of crafting new rules of civil procedure as part of a comprehensive 1984 overhaul of the Maryland Rules, an event precipitated by the merger of law and equity. The actions taken by the Rules Committee shed light on precisely what test was thereafter to be applied, under what was the newly-promulgated Maryland Rule 2–341, a rule which is textually silent on this matter.

Before the 1984 re-codification, the Standing Committee on Rules of Practice and Procedure considered a proposed draft of Maryland Rule 2–341 which was modeled on the then extant version of Federal Rule of Civil Procedure 15, including its provision regarding the relation back of amendments.[13] When the proposed draft was presented at the November 21, 1980 meeting of the Rules Committee, "[s]ome members expressed concern that this issue is more substantive than procedural," prompting the rejection of the draft and the issuance of

---

**13.** The proposed draft rule, considered at the November 21, 1980 Rules Committee meeting, provided in part:

(d) Relation Back of Amendments

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in defending on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against that party.

Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, Nov. 21, 1980, at 11 (available at http://mdcourts.gov/lawlib/collections/digitalcollections.html) (last visited Apr. 15, 2013).

instructions to redraft the rule, which was to be presented at a future meeting. Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, Nov. 21, 1980, at 12–13 (available at http://mdcourts.gov/lawlib/collections/digital collections.html) (last visited Apr. 15, 2013).

When the re-draft was submitted, at a meeting on January 9, 1981, it no longer contained the language regarding the relation back of amendments but was patterned after former Maryland Rule 320, the rule it was intended to replace (and which was the rule cited in *Crowe v. Houseworth, supra,* 272 Md. 481, 325 A.2d 592). Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, Jan. 9, 1981, at 2–4 (available at http://mdcourts.gov/lawlib/collections/digitalcollections.html) (last visited Apr. 15, 2013). And, when Rule 2–341 was ultimately adopted by the Court of Appeals, to be effective on July 1, 1984, it, too, did not include the previously proposed "relation back" language. 11 Md. Reg., Issue 9, at S–1, S–26–S–27 (April 27, 1984). Moreover, although Rule 2–341 has been amended several times since, it has never been amended so as to include a provision for the relation back of amendments, let alone specific language providing that an amendment relates back if it is transactionally related to an earlier pleading.

In short, we conclude, based upon this history, that the Court of Appeals, in adopting Rule 2–341, rejected a transactional rule for the doctrine of relation back, notwithstanding language in *Cline II, Kirgan,* and *Walls* which might be read to suggest otherwise. We therefore apply the test as stated in *Crowe,* 272 Md. at 485–86, 325 A.2d 592, that is, whether, in comparing the amendment with an earlier and timely pleading, "the operative factual situation" remains "essentially the same," a test reiterated in subsequent cases, having a greater factual similarity, with the instant case, than *Crowe.*

**B.**

Unlike the case before us, where the question is whether the averments of an amendment introduce a new cause of

action, the unsettled matter, in *Crowe,* was whether an amendment attempting to add parties related back to an earlier pleading. Because of this difference in issue, apart from its express statement of the test for determining whether a matter relates back, *Crowe* is, for our purposes, of limited assistance. We therefore turn to cases, which have applied the rule stated in *Crowe* but in circumstances more analogous to those presented here.

Among the cases cited by the parties, two are particularly relevant to our analysis, because, like the instant case, they address "relation back" in the context of mixed contract and tort claims. They are: *University Nursing Home, Inc. v. R.B. Brown & Associates, Inc.,* 67 Md.App. 48, 506 A.2d 268 (1986), and *Gensler v. Korb Roofers, Inc.,* 37 Md.App. 538, 378 A.2d 180 (1977). As these decisions reached conflicting conclusions, it is hardly surprising that Ms. Youmans relies upon the former of the two cases, *University Nursing Home,* which held that the amendment at issue related back, while Douron, Inc. relies upon the latter, *Gensler,* which held that it did not. And, to further complicate matters, these two decisions resist reconciliation.

Because we believe that *Gensler* misapplied the "relation back" test, we conclude that *University Nursing Home* controls the outcome of this case. In *Gensler v. Korb Roofers, Inc.,* the case upon which Douron, Inc., relies, a husband and wife (the Genslers) brought a breach of warranty action against a homebuilder, John N. Bowers, Inc., and its roofing subcontractor, Korb Roofers, Inc., after the recently constructed roof of their new home leaked. Among other things, the Genslers alleged that "the roof and roof drains were improperly constructed"; that the defendants had failed to either "install the roof and drain system on the roof" or "to pitch the roof" "in a good and workmanlike manner"; and that these deficiencies amounted to a breach of warranty and had "caused the leaks complained of." 37 Md.App. at 539–40, 378 A.2d 180.

The Genslers, however, failed to file their suit within the two-year statute of limitations imposed upon claims for breach of warranty, under § 10–204(c) of the Real Property Article.[14] *Id.* at 540, 378 A.2d 180. After the defendants filed demurrers, the Genslers filed an amended declaration, against Korb only, alleging the same failures in workmanship. *Id.* at 540, 378 A.2d 180. When the trial court thereafter sustained the demurrers in question, without leave to amend, the Genslers appealed, but only as to the demurrer sustained in favor of Korb. *Id.* at 540 n. 1, 541, 378 A.2d 180.

The *Gensler* Court affirmed, concluding that the Genslers' breach of warranty claim was barred by limitations. *Id.* at 541, 378 A.2d 180. Rejecting the Genslers' contention that the amended declaration (based on negligence) related back to the original declaration (based on breach of warranty), we tersely observed, "There is absolutely nothing in that original declaration relating to negligence," *id.* at 543, 378 A.2d 180, despite the language in the original declaration alleging that the roof and drainage system were "improperly constructed" and that they were not installed "in a good and workmanlike manner." *Id.* at 539, 378 A.2d 180. The *Gensler* Court explained that the amended declaration "set forth a new cause of action founded on a different legal theory, namely, negligence" and that, therefore, it did not "relate back" to the original declaration. *Id.* at 543, 378 A.2d 180. And, because it did not relate back and was filed more than three years after the cause of action accrued, the Court, in *Gensler,* declared that the negligence claim was barred by Courts & Judicial Proceedings § 5–101, the three-year statute of limitations generally applicable to civil actions. *Gensler,* 37 Md.App. at 543, 378 A.2d 180.

But a vigilant reading of *Gensler* reveals an unfortunate error in its analysis. In setting forth the "relation back" test, the *Gensler* Court correctly said: "The rule is that amendments to pleadings are to be allowed freely and liberally[.]"

---

**14.** The current statute is Maryland Code (1974, 2010 Repl.Vol.), § 10–204(d) of the Real Property Article.

*Gensler,* 37 Md.App. at 543, 378 A.2d 180. But then, it slightly misquoted *Crowe v. Houseworth,* 272 Md. 481, 325 A.2d 592 (1974), by adding a common coordinating conjunction to telling effect. It said, "so long as the operative factual pattern remains essentially the same, **and** no new cause of action is stated invoking different legal principles," *Gensler,* 37 Md.App. at 543, 378 A.2d 180 (emphasis added), instead of what the *Crowe* Court actually said, which was: "so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed on a new theory or invoking different legal principles." *Crowe,* 272 Md. at 485–86, 325 A.2d 592. Applying this misstated version of that test, the *Gensler* Court concluded: "The amended declaration, in the matter now before us, does set forth a new cause of action founded on a different legal theory, namely, negligence" and, that being so, held that it did not relate back to the original declaration and was therefore barred by limitations. *Gensler,* 37 Md.App. at 543, 378 A.2d 180.

It thus appears that the *Gensler* Court misread the test in *Crowe* as requiring **both** that "the operative factual situation" remain "essentially the same" **and** that "no new cause of action is stated invoking different legal principles." *Gensler,* 37 Md.App. at 543, 378 A.2d 180. In fact, if the former condition is satisfied, then the latter automatically follows. *See Grand–Pierre v. Montgomery Cnty.,* 97 Md.App. 170, 176, 627 A.2d 550 (1993) (observing that "[m]erely changing the legal theory does not constitute a new and different cause of action for purposes of statute of limitations and relation back" because the "material operative facts, not the legal theory, determine the cause of action").

Indeed, a comparison of the Genslers' original and amended declarations reveals that the "operative factual situation" remained "essentially the same." *Crowe,* 272 Md. at 485–86, 325 A.2d 592. And because that was so, the amended declaration, in *Gensler,* did not introduce a new cause of action, since, according to the actual words of *Crowe,* "so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed on a new

theory or invoking different legal principles." *Id.* at 485–86, 325 A.2d 592.

We now turn to *University Nursing Home, Inc. v. R.B. Brown & Associates, Inc.*, the case relied upon by Youmans. In that case, University Nursing Home brought an action against its insurance agent, R.B. Brown & Associates, to recover damages resulting from a fire loss, a loss against which it was not adequately insured because of Brown's purported failure to procure sufficient coverage. The initial declaration, as well as a later amended version of that document, alleged, among other things, negligent misrepresentation. But it was not until the plaintiff nursing home filed a third amended declaration that breach of contract was alleged. 67 Md.App. at 52, 54–56, 506 A.2d 268.

During the trial of this matter, the circuit court granted the defendant insurance agent's motion for judgment on all counts of the third and final amended declaration, including the breach of contract count, proclaiming that that claim was barred by limitations. *Id.* at 53–54, 506 A.2d 268. This Court found otherwise, applying the "relation back" test enunciated in *Crowe*, that is, whether "the operative factual situation" of the initial and amended declarations were "essentially the same." 272 Md. at 485–86, 325 A.2d 592. Upon observing that that test was "especially applicable and appropriate," because "the mixed tort and contract principles," presented by the case, lent themselves "through the amendment process, to development of different theories of recovery," *University Nursing Home*, 67 Md.App. at 56, 506 A.2d 268, we compared the "operative factual situation" in the initial declaration with that found in the first and third amended declarations, to determine whether it remained "essentially the same after amendment." *Id.* at 55, 506 A.2d 268.

Both the initial and first amended declarations alleged, among other things, that the insurance agent had negligently misrepresented that it "would provide sufficient" insurance coverage, in that it "knew or should have known the types of risks" the nursing home would need to insure against, as well

as "the types of losses it might suffer"; that the insurance agent "held itself out to the public as an expert in insurance matters"; and that the nursing home detrimentally relied upon the agent's "misrepresentations." *Id.* at 57, 506 A.2d 268 (original declaration); *id.* at 58–59, 506 A.2d 268 (first amended declaration). Later, after the statute of limitations had run as to all of its claims, the plaintiff nursing home filed a third amended declaration adding a breach of contract count, alleging that the insurance agent "agreed to undertake to obtain" the business interruption insurance coverage requested by the nursing home; that there was "a contract of insurance," the terms of which required that the insurance agent procure "adequate" coverage; and that the agent breached this contract by failing to obtain the necessary coverage. *Id.* at 59, 506 A.2d 268.

In concluding that the untimely breach of contract count of the third amended declaration "related back" to the earlier and timely declaration, we observed that each declaration was "based upon the relationship" the nursing home entered into with the insurance agent, in which "the latter undertook, in exchange for a fee, to procure adequate insurance coverage for" the nursing home, and that the breach of contract count was based upon facts which were "essentially contained" in the negligent misrepresentation counts in the earlier declarations. *Id.* at 60, 506 A.2d 268. We then concluded that, because the insurance agent "had notice of the specific conduct upon which the contract claim was based" before the limitations period had run, the breach of contract claim related back and therefore the lower court erred in granting the defendant insurance agent's motion for judgment as to that count. *Id.*

It is evident that the reasoning of *University Nursing Home* applies to the case at bar. In accordance with that reasoning, we compare the initial and timely complaint with the final and untimely complaint in the instant case to determine whether they state the same "material operative facts."

The initial complaint states, in paragraph 1, that Youmans was employed by MC–DEP; in paragraph 5, that MC–

DEP had a contract with Douron, Inc. "to purchase, install and maintain office furniture at facilities operated and maintained by MC–DEP"; and, in paragraph 6, that Douron, Inc., "through its agents, assembled and installed office furniture and desks in the MC–DEP facilities" where Youmans worked, facts from which it may reasonably be inferred that Douron, Inc. owed a duty to provide reasonably safe office furniture to Youmans's employer, a duty which extended to Youmans.[15] It then alleges, in paragraph 10, that Douron, Inc. "fail[ed] to properly assemble the desk at issue," in effect, an allegation that it was negligent in its assemblage of that piece of furniture.

The second amended and final complaint alleges, in paragraphs 1, 7, and 8, the same facts as previously pleaded in paragraphs 1, 5, and 6 of the initial complaint, relating to the duty which Douron, Inc., owed to Youmans; paragraphs 22 and 23 expand upon that legal duty and articulate a new legal theory, that is, negligence, but do not add new "material operative facts."

As it was in *University Nursing Home*, it is "appropriate," here, to apply the "relation back" doctrine, to the claim at issue, in light of "the mixed tort and contract principles present," which "lend themselves, through the amendment process, to development of different theories of recovery." 67 Md.App. at 56, 506 A.2d 268. Moreover, Douron, Inc., like the defendant in *University Nursing Home*, "had notice of the specific conduct upon which" the amended complaint was based. *Id.* at 60, 506 A.2d 268. The "purpose of the statute" of limitations "does not extend to situations where, in the words of Justice Holmes,' * * * a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, * * *.' " *Doughty v. Prettyman*, 219 Md. 83, 92–93, 148 A.2d

---

**15.** Under *Restatement (Second) of Torts* § 404, an independent contractor, as Douron, Inc., was, which "negligently makes, rebuilds, or repairs a chattel for another," such as the office furniture manufacturer in this case, "is subject to the same liability as that imposed upon negligent manufacturers of chattels."

438 (quoting *New York Central & Hudson R.R. v. Kinney,* 260 U.S. 340, 346, 43 S.Ct. 122, 67 L.Ed. 294 (1922)).

Because the circuit court erred in holding that count II of the final complaint, alleging negligence, did not relate back to the initial complaint, which was timely filed, we reverse the judgment of the circuit court, granted in favor of Douron, Inc., as to count II of the final complaint, and remand for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**